# United States District Court
# For the District of Columbia

_____

|  |  |  |
|---|---|---|
| **HAWAI`I ORCHID** | ) | |
| **GROWERS ASSOCIATON**, | ) | |
| C/O Donald Eberly, President | ) | |
| 14-4865 Iliani Road | ) | |
| Post Office Box 2069 | ) | |
| Pahoa, Hawai`i 96778 | ) | |
| | ) | |
| **Plaintiffs**, | ) | |
| | ) | |
| **v.** | ) | Civil Action No. 05-   (   ) |
| | ) | |
| **UNITED STATES DEPARTMENT** | ) | |
| **OF AGRICULTURE**, | ) | |
| | ) | |
| SERVE:  Kenneth L. Wainstein | ) | |
| Interim United States Attorney | ) | |
| for the District of Columbia | ) | |
| Judiciary Center | ) | |
| 555 Fourth Street, N.W. | ) | |
| Washington, D.C. 20530-0001 | ) | |
| | ) | |
| Alberto R. Gonzales | ) | |
| Attorney General | ) | |
| Room 5111 | ) | |
| Tenth Street and | ) | |
| Constitution Avenue, N.W. | ) | |
| Washington, D.C. 20530-0001 | ) | |

and                                        )
                                           )
**Mike Johanns**,                          )
                                           )
SERVE:   Mike Johanns                      )
         Secretary of Agriculture          )
         U.S. Department of Agriculture    )
         Jamie L. Whitten Federal Building )
         Room 200-A                        )
         1400 Independence Avenue, S.W.    )
         Washington, D.C. 20250-0002       )
                                           )
         and                               )
                                           )
**W. Ron DeHaven**,                        )
                                           )
SERVE:   W. Ron DeHaven, D.V.M.            )
         Administrator                     )
         Animal and Plant Health           )
          Inspection Service               )
         U.S. Department of Agriculture    )
         Jamie L. Whitten Federal Building )
         Room 312-E                        )
         1400 Independence Avenue, S.W.    )
         Washington, D.C. 20250-0312       )
                                           )
         and                               )
                                           )
**UNITED STATES DEPARTMENT**               )
**OF THE INTERIOR**,                       )
                                           )
         and                               )
                                           )

**Gale Norton**,                                      )
                                                     )
SERVE:   Gale Norton                                 )
         Secretary of the Interior                   )
         U.S. Department of the Interior             )
         1849 C Street, N.W.                         )
         Washington, D.C. 20240-0001                 )
                                                     )
         and                                         )
                                                     )
**Matthew J. Hogan**,                                )
                                                     )
SERVE:   Matthew J. Hogan                            )
         Acting Director                             )
         U.S. Fish and Wildlife Service              )
         1849 C Street, N.W.,                        )
          Mailstop 3256 MIB                          )
         Washington, D.C. 20250-0002                 )
                                                     )
         **Defendants**.                             )

COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF

NATURE OF THE ACTION

1.   Plaintiffs seek declaratory and injunctive relief under the Administrative Proce-
dure Act, 5 U.S.C. §§ 701-706; under the Plant Protection Act, 7 U.S.C. §§ 7701(1),
7701(3), 7701(8); and under the Endangered Species Act, 16 U.S.C. § 1531 *et seq*.
Plaintiffs challenge a Final Rule of the Animal and Plant Health Inspection Service,

United States Department of Agriculture, which allows importation of an additional taxon of plants, epiphytic orchids of the genus *Phalaenopsis* (moth orchids) from Taiwan established in a growing medium. As of Friday, June 4th, 2004 such importation is allowed subject to the growing, inspection, and certification requirements of 7 C.F.R. § 319.37-8(e) (a part of that which is referred to generally as the "Quarantine 37" regulations). "Importation of Orchids of the Genus *Phalaenopsis* From Taiwan in Growing Media," 69 Fed. Reg. 24916-36 (2004) (to be codified at 7 C.F.R. § 319.37-8(e)). Plaintiffs assert that the determination by Defendant Animal and Plant Health Inspection Service, after consultations with the Fish and Wildlife Service, United States Department of the Interior, that the Final Rule will not adversely affect Federally-listed or proposed Endangered or Threatened Species or their habitats, 69 Fed. Reg. 24916 (2004), is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law. Plaintiffs assert that Defendant's Fish and Wildlife Service, United States Department of the Interior concurrence with the Final Rule effects an unlawful "Taking." Plaintiffs assert that Defendant's Fish and Wildlife Service, United States Department of the Interior concurrence with the determination by Animal and Plant Health Inspection Service that the Final Rule will not adversely affect Federally-listed

or proposed Endangered or Threatened Species is arbitrary, capricious, an abuse of discretion, and not in accordance with law because it disregards the risk of invasion of alien species from Taiwan through introduction of suitable breeding habitats.

PARTIES

2.  Hawai`i Orchid Growers Association is an unincorporated non-profit association established in 1995 in Hawai`i County, State of Hawai`i that promotes coordinated efforts among breeders, propagators, and growers of orchids in Hawai`i and supports marketing, research, and educational projects. Hawai`i Orchid Growers Association here asserts claims for declaratory and injunctive relief in its name on behalf of its members. HAWAI`I REVISED STATUTES § 429-7(b). One or more members of the Hawai`i Orchid Growers Association are growers of potted *Phalaenopsis* spp. orchids; one or more members of the Hawai`i Orchid Growers Association are growers of orchids other than *Phalaenopsis* spp. orchids. One or more members of the Hawai`i Orchid Growers Association are producers of plants other than *Phalaenopsis* spp. orchids. One or more members of the Hawai`i Orchid Growers Association will suffer immediate, irreparable injury as a result of adoption of the Final Rule allowing the importation of finished, flowering *Phalaenopsis* spp. potted orchid plants, this from

threats to Endangered or Threatened Species that occur in Hawai`i and in the United States. Defendant United States Department of Agriculture is an Agency and entity of the United States. Defendant United States Department of Agriculture has its principal place of business in the District of Columbia. Mike Johanns is the Secretary of Agriculture. Secretary Johanns is sued in his official capacity only. W. Ron DeHaven, D.V.M., is the Administrator, Animal and Plant Health Inspection Service, United States Department of Agriculture. It was the Animal and Plant Health Inspection Service, United States Department of Agriculture which, in a Final Rule published Wednesday, May 5th, 2004, added orchids of the genus *Phalaenopsis* from Taiwan to the list of plants that may be imported, subject to specified growing, inspection, and certification requirements, in an approved growing medium. Dr. DeHaven is sued in his official capacity only. Defendant United States Department of the Interior is an Agency and entity of the United States. Defendant United States Department of the Interior has its principal place of business in the District of Columbia. Defendant Fish and Wildlife Service, United States Department of the Interior concurred with the determination by Animal and Plant Health Inspection Service that the Final Rule will not adversely affect Federally-listed or proposed Endangered or Threatened Species.

- 6 -

Gale Norton is the Secretary of the Interior. Secretary Norton is sued in her official capacity only. Matthew J. Hogan is the Acting Director, United States Fish and Wildlife Service. Acting Director Hogan is sued in his official capacity only. Secretary Johanns, Dr. DeHaven, Secretary Norton, Acting Director Hogan, the United States Department of Agriculture, and the United States Department of the Interior are hereinafter referred to, collectively, as "the Defendants."

### JURISDICTION AND VENUE

3.   This Court has jurisdiction under 5 U.S.C. § 702, 16 U.S.C. § 1540(g)(1), and 28 U.S.C. § 1331. This Civil Action arises from the Final Rule published Wednesday, May 5th, 2004 which is now final. 5 U.S.C. § 704. This Court previously considered this Final Rule in *Hawai`i Orchid Growers Assoc. v. U.S. Department of Agriculture, et al.*, 2005 U.S. Dist. LEXIS 4548 (D.D.C. 2005). This Court there dismissed for want of jurisdiction the Endangered Species Act claims that are the subject of this Civil Action. *Id.*, 2005 U.S. Dist. LEXIS 4548 *8.

4.   Venue is proper in this Court under 5 U.S.C. § 703, 16 U.S.C. § 1540(g)(3)(A), and 28 U.S.C. § 1391(e).

5.  The requested relief is proper under 5 U.S.C. § 706; under 16 U.S.C. § 1540(g)-(1); and under 28 U.S.C. §§ 1361, 2201, 2202.

6.  In compliance with 16 U.S.C. § 1540(g)(2)(A)(i), and more than sixty days prior to the filing of this Civil Action, Plaintiffs gave Notice to Defendants of Plaintiffs' intent to file suit under the citizen suit provision of the Endangered Species Act, 16 U.S.C. § 1540(g)(1)(A), for Defendants' violations of: (a) Section 2(c)(1) of the Endangered Species Act, 16 U.S.C. § 1531(c)(1), by failing to ensure that Agency actions, specifically, Agency actions under the Final Rule entitled "Importation of Orchids of the Genus *Phalaenopsis* From Taiwan in Growing Media," 69 Fed. Reg. 24916-36 (2004) (to be codified at 7 C.F.R. § 319.37-8(e)), conserve Federally-listed Endangered Species and Threatened Species and do not jeopardize the continued existence of Endangered Species and Threatened Species or critical habitat; (b) Section 7(a)(2) of the Endangered Species Act, 16 U.S.C. § 1536(a)(2), by failing to ensure that this Final Rule is not likely to jeopardize the continued existence of any Federally-listed Endangered Species or Threatened Species, or is not likely to result in the destruction or adverse modification of critical habitat of such Species, and by failing to use the best scientific and commercial data available in the consultations

- 8 -

over this Final Rule; and (c) Section 9 of the Endangered Species Act, 16 U.S.C. § 1538(a), through past, present, and planned future actions which have resulted in, and imminently threaten to continue, unlawful "Take" of Federally-listed Endangered Species and Threatened Species within the meaning of said Section and implementing regulations. The violations complained of in the Notice are continuing and have not been remedied.

AVERMENTS

<u>Kahului Airport.</u>

7.  In connection with a project to repave and strengthen the runways at Kahului Airport on the island of Maui, State of Hawai`i, the Hawai`i Department of Transportation and the Federal Aviation Administration conducted a Biological Assessment and, as required by 16 U.S.C. § 1536(a)(2) initiated consultations with the Fish and Wildlife Service, United States Department of the Interior to assess the potential effects of the project on Federally-listed or proposed Endangered or Threatened Species or their habitats.

8.  A part of the Biological Assessment was a paper entitled "Effectiveness of Potential Mitigation Measures for Selected Invasive Alien Taxa" prepared and published

by Dr. Francis Howarth of the Department of Natural Sciences, Bishop Museum, Honolulu, Hawai`i on February 3rd, 1997. A copy of this paper is Attachment 1 to this Complaint. The paper was later published as Appendix H of the "Alien Species Biological Assessment" prepared under contract with the Federal Aviation Administration and published on March 10th, 1997. Dr. Howarth has particular concern for invasion by biting midges, and he focuses on the risk on invasion by the *Culicoides* species through introduction of suitable breeding habitats, not on the risk of invasion that might be imposed through introduction of specific hosts:

**Immature Midges in Breeding Habitats:**

**Pre Entry:**

- Damp absorbent material (such as sphagnum, other mosses, and wood chips) used to transport cut flowers and other fresh plant and animal material can harbor immatures of biting midges as well as many other pests. Some *Culicoides* aestivate as dry immatures and can rehydrate and emerge when moistened. This strategy allows for efficient long-distance dispersal in untreated material. Larvae or other immature stages are likely to be found in breeding substrates at any time of the year, even in the temperate region. *Culicoides obsoletus* is thought to over winter as larvae. Therefore, the risk may not be seasonal, unless the shipment is treated or other precautions are taken.
- Treatment of this packing material before use is recommended. Treatments could include heat, dipping or washing with soap solution, or fumigation. Certification that organic packing material is free of pests would further reduce the risk.

**Port of Entry:**

• Suspected substrates should be looked for during inspections and treated if necessary.
• High risk material also may include fresh cut flowers and other living plant material, particularly from high risk areas. Larval biting midges have been intercepted in Hawaii in bromeliad leaf axils, a known habitat for some *Culicoides* species. The recent arrival of the mosquito, *Wyeomyia mitchellii*, is suspected of having been introduced with bromeliads from southeastern North America. A number of plant-feeding insects remain closely associated with their host; some are sessile like the scale and white fly on the stems, flowers, leaves, and fruits of plants.
• Other measures are listed in Table H2 and similar to the descriptions given for the ants.

**Post Entry**

• Organic packing material from high risk areas should be treated before disposal on Maui. This can be accomplished by heat, submersion in insecticidal or soap solution, or by fumigation. Heat (hot water dip) would probably be the cheapest and safest.
• Given the tiny size, cryptic behavior and high mobility, Culicoides are probably very difficult to control or eradicate once they become well established. Therefore, greater reliance must be placed on prevention.

*Effectiveness of Potential Mitigation Measures for Selected Invasive Alien Taxa*, Hawai`i Biological Survey Technical Report Number 3, February 3rd, 1997, at 9.

9. The Biological Assessment was completed on March 10th, 1997 under a contract with the Federal Aviation Administration. Two sections of the Biological Assessment,

- 11 -

Section 5 "Determination of Alien Species" and Section 6 "Impact of Alien Species,"

deal with the toll taken on Hawai`i by the invasion of alien species. The Biological As-

sessment summarized in Section 5 the threat posed by the invasion of alien species:

> At present, there are over 2,500 alien arthropod species of insects and about
> 75+ alien non-marine mollusks established in the wild in Hawaii (Howarth
> 1985). It is estimated (CGAPS 1996) that, each year, approximately 20 to 30
> new alien insects make their way to Hawaii and become established. Annually,
> about three of these species turn out to be economic pests (OTA 1993). . . .
> . . . .
> The introduction of alien species is the greatest single threat to the conser-
> vation of native species and to the integrity of Haleakala National Park and
> other natural areas on Maui. (Brockie *et al.* 1988). The impacts caused by alien
> species are the most important factor in population declines, endangerment,
> and extinctions of native organisms in Hawaii. (CGAPS 1996; Holt 1996).
> Furthermore, alien species can undo all other conservation programs. Alien
> species are also a major impediment to agriculture and economic develop-
> ment (including tourism) in Hawaii, causing hundreds of millions of dollars
> of damage to the economy each year (CGAPS 1996). . . .

*Alien Species Biological Assessment for Kahului Airport Improvements, Kahului, Maui,*

*Hawaii*, March 10th, 1997, at 5-1.

10.  Just as in Dr. Howarth's paper, Section 5 of the Biological Assessment likewise

focuses on the risk on invasion by alien species through introduction of suitable

breeding habitats, not on the risk of invasion by alien species that might be imposed

through introduction of specific hosts:

- 12 -

About 2,000 alien species established in Hawaii arrived inadvertently. Many insects are masters at dispersal. They are common stowaways on aircraft hiding within the plane as well as in cargo. Most of the inadvertent species arrived associated with their host or the substrate used for diapause (*e.g.*, as eggs in soil, plant material, or on their vertebrate hosts). Species arriving on their hosts can be removed during inspection or quarantine, but many cryptic species escape this process. The invisibility of insects is emphasized by the convergent accumulation of the same pests on the same crops in different parts of the world. Over 400 insect species were purposefully introduced, mostly as biological control agents, but a few as pollinators or for other purposes. Many of these purposeful introductions have also had negative environmental impacts (Howarth 1985a; 1991).

*Alien Species Biological Assessment for Kahului Airport Improvements, Kahului, Maui, Hawaii*, March 10th, 1997, at 5-1.

11. Upon receipt of the Biological Assessment, on March 11th, 1997 the Federal Aviation Administration provided it to the Fish and Wildlife Service, United States Department of the Interior for consultation as required by 16 U.S.C. § 1536(a)(2). The Fish and Wildlife Service, United States Department of the Interior issued its "Biological Opinion" on July 23rd, 1997. A copy of this paper is Attachment 2 to this Complaint. In its Biological Opinion, the Fish and Wildlife Service, United States Department of the Interior concludes, as to the effects of the project to repave and strengthen the runways at Kahului Airport, that:

The most serious potential effects involve introduction of alien species. The effects of alien species have been cited as causes of past decline, and potential further decline, of all T&E [Federally-listed or proposed Endangered or Threatened Species] species in Hawaii (Asquith 1997, NMFS 1992, NMFS & USFWS 1996, USFWS 1983b, 1984, 1990, 1992b, 1996a, 1997, in prep. a, b). The Service believes that all presently listed species on Maui could be adversely affected by alien species not yet on Maui. . . .

*Biological Opinion of the U.S. Fish and Wildlife Service for the Kahului Airport Improvements, Phases 1 and 2 Kahului, Maui, Hawaii*, July 23rd, 1997, at 7.

Almost all alien species introductions in Hawaii are the result of human actions, either governmental or private. For example, a total of 2275 alien invertebrates were intercepted by Federal inspectors in 1994. Out of this total, 89% were found in either air cargo or passenger baggage (Noda and Associates 1997). It is estimated that over 4373 alien species have become established in the wild in the Hawaiian Islands. This includes 956 plants, 46 birds, 19 mammals, 23 reptiles, 4 amphibians, 73 fish, and more than 3247 invertebrates (Eldridge and Miller 1997). In addition to the total number of alien species, the rate at which alien species are entering Hawaii is increasing. The average number of invertebrate introductions per year has gone from 16 during the years between 1937 and 1961, to 20 in the 1970s (TNCH 1992). The current estimated rate of invertebrate introduction to Hawaii is between 20-30 species per year (Noda and Associates 1997).

*Biological Opinion of the U.S. Fish and Wildlife Service for the Kahului Airport Improvements, Phases 1 and 2 Kahului, Maui, Hawaii*, July 23rd, 1997, at 23.

The primary concern of the Service is the potential indirect effect of this project on listed and proposed species and critical habitat due to the potential introduction of alien species to the island of Maui (the indirect action area).

The continuing influx of alien species poses a grave threat to all native species in Hawaii, including those on Maui. These species are introduced by accidental or deliberate transport on aircraft and ships. The proportion of these species that arrive by air is probably large (BA [the Biological Assessment of March 10th, 1997] table 1-5), especially for those species purposely transported by humans. Because of extensive interisland transport, even native species on other Hawaiian Islands could eventually be affected by alien organisms that become established on Maui.

There is little question that a large number of alien organisms which could be transported purposefully or inadvertently by air could, if established on Maui, cause or contribute to the eventual extinction of listed taxa. Examples include weaver ants, high-altitude mosquitoes, biting midges, snakes and predatory lizards (BA pp. 6-1 to 6-10). Alien plants and animals that colonize native ecosystems can affect listed and proposed species and critical habitat through a variety of means documented in scientific literature. In addition to the direct effects such as predation and herbivory (Cole *et al.* 1992, Sohmer 1996), parasitism (van Riper and van Riper 1985), and competition (Smith 1985), non-native species can interfere with pollination (Cole *et al.* 1992), promote disturbance such as fire (Smith 1985), change nutrient regimes (Vitousek *et al.* 1987), or favor the spread of other alien species (Wester and Wood 1997). . . .

*Biological Opinion of the U.S. Fish and Wildlife Service for the Kahului Airport Improvements, Phases 1 and 2 Kahului, Maui, Hawaii*, July 23rd, 1997, at 24-25. In this Biological Opinion, the Fish and Wildlife Service, United States Department of the Interior expressly precludes even the incidental "Take" of Endangered Species and of Threatened Species:

Introduction of alien species as a result of this project, although unlikely, would be practically irreversible and could have catastrophic consequences for one or more listed species included in this biological opinion. Therefore, any incidental taking that results from such an introduction is not authorized. . . .

*Biological Opinion of the U.S. Fish and Wildlife Service for the Kahului Airport Improvements, Phases 1 and 2 Kahului, Maui, Hawaii*, July 23rd, 1997, at 30.

Informal Rulemaking Proceedings.

12. Importation of plants and plant products is restricted or prohibited to prevent the introduction or dissemination of plant pests and noxious weeds. Subpart 37 of Section 319, Title 37, Code of Federal Regulations (known generally as "the "Quarantine 37" regulations) sets out prohibitions and restrictions on the importation of nursery stock, plants, roots, bulbs, seeds, and other plant products. Generally, this Subpart requires that imported plants "shall be free of sand, soil, earth, and other growing media." 7 C.F.R. § 319.37-8(a). Now, certain greenhouse-grown plants from ten listed taxa may be imported in an approved growing medium. 7 C.F.R. § 319.37-8(e). This Quarantine 37 provision specifies attributes for the greenhouses in which plants from these ten listed taxa are to be cultivated, including requirements that these greenhouses must have screening with openings of not more than 0.6 mm on all vents and

openings except entryways; that entryways must be equipped with automatic closing doors, 7 C.F.R. § 319.37-8(e)(2)(ii); and that plants in these greenhouses must be rooted and grown in approved growing media on benches supported by legs and raised at least 46 cm above the floor, 7 C.F.R. § 319.37-8(e)(2)(vi). These general program requirements are supplemented for *Rhododendron* spp., 7 C.F.R. § 319.37-8(e)(2)(ii), -8-(e)(2)(ix), -8(e)(2)(x), and for *Hyacinthus* spp., 7 C.F.R. § 319.37-8(f).

13. As required by 5 U.S.C. § 553(b), on September 1st, 1998 Animal and Plant Health Inspection Service issued notice of a proposed Rule in the FEDERAL REGISTER. 63 Fed. Reg. 46403-46406 (1998). In 1997 the Government of Taiwan had requested that Animal and Plant Health Inspection Service consider amending 7 C.F.R. § 319.37-8(e) to allow importation of *Phalaenopsis* spp. orchid plants established in sphagnum moss as a growing medium. By April 1997 Animal and Plant Health Inspection Service had concluded in a Risk Assessment that "the importation of *Phalaenopsis* spp. orchids from any country—not just Taiwan—under the conditions required by § 319.37-8(e) would pose no greater pest risk than is posed by the importation of epiphytic orchid material currently allowed entry from any country as bare-rooted plants under § 319.37-8(a) or established on other epiphytic growing media

(tree fern slabs, coconut husks, or coconut fiber) under § 319.37-8(d)." Thus Animal and Plant Health Inspection Service proposed a Rule which would "allow *Phalaenopsis* spp. orchids to be imported into the United States established in approved growing media from any country provided the orchids were produced, handled, and imported in accordance with the requirements of § 319.37-8(e) . . . ." 63 Fed. Reg. 46404 (1998).

14.  Included also with the notice of the proposed Rule, in accordance with 5 U.S.C. § 603, was an Initial Regulatory Flexibility Analysis which announced Animal and Plant Health Inspection Service's preliminary view, based on admittedly limited information, that "there is no basis to conclude that the impact of this proposed Rule would result in any significant impact on a substantial number of small entities." 63 Fed. Reg. 46406 (1998). Animal and Plant Health Inspection Service then offered no specific phytosanitary measures beyond the general program requirements contained in 7 C.F.R. § 319.37-8(e). *Id.*

15. The Hawai`i Orchid Growers Association provided Comments on November 30th, 1998 as later did the Society of American Florists, the American Nursery and Landscape Association, the Hawai`i Department of Land and Natural Resources, the Hawai`i Department of Agriculture, the United States Fish and Wildlife

Service, the United States Department of the Interior, the United States Geological Survey, the University of Hawai`i, and Hawai`i's Congressional Delegation. The Office of the Chief Counsel for Advocacy of the United States Small Business Administration explicitly responded to the Initial Regulatory Flexibility Analysis, and, as well, the Hawai`i Orchid Growers Association explicitly responded to the Initial Regulatory Flexibility Analysis.

16. In October 2002, as required by 16 U.S.C. § 1536(a)(2), Animal and Plant Health Inspection Service initiated consultations with the Fish and Wildlife Service, United States Department of the Interior to assess the potential effects of the proposed Rule on Federally-listed or proposed Endangered or Threatened Species or their habitats. On April 7th, 2003 the Fish and Wildlife Service, United States Department of the Interior concurred with the determination of the Animal and Plant Health Inspection Service that the proposed Rule would not adversely affect Federally-listed or proposed Endangered or Threatened Species or their habitats.

17. In response to the Comments that had been submitted on the proposed Rule, on May 9th, 2003 Animal and Plant Health Inspection Service narrowed the application of the proposed Rule to *Phalaenopsis* spp. orchids from Taiwan only, published

an Environmental Assessment, and revised and reissued the Risk Assessment of 1997 as the Risk Analysis of 2003. 69 Fed. Reg. 24916-24917 (2004). Animal and Plant Health Inspection Service did not then revise its Initial Regulatory Flexibility Analysis nor review the Comments that had been received on that Initial Regulatory Flexibility Analysis. 68 Fed. Reg. 24915 (2003).

18. Animal and Plant Health Inspection Service's 1997 Risk Assessment and 2003 Risk Analysis are supposedly premised on available scientific literature and Animal and Plant Health Inspection Service's pest inspection records for imported seedlings of the genus *Phalaenopsis* and the plant family *Orchidaceae*. 69 Fed. Reg. 24920 (2004). In fact, the 1997 Risk Assessment and the 2003 Risk Analysis are limited to "quarantine pests" "specifically linked in scientific literature or APHIS interception records with orchids of the genus *Phalaenopsis*." 69 Fed. Reg. 24922 (2004). This focus on the risk of invasion of alien species on specific hosts, orchids of the genus *Phalaenopsis*, rather than the risk of invasion of alien species through introduction of suitable breeding habitats, is entirely inconsistent with the Biological Assessment of March 10th, 1997 and the Biological Opinion of the Fish and Wildlife Service, United States Department of the Interior, both prepared to assess the effects of the project to repave

- 20 -

and strengthen the runways at Kahului Airport. The Biological Assessment and the Biological Opinion focus not on the risk of invasion of alien species on specific hosts, but rather on the risk of invasion by alien species through introduction of suitable breeding habitats.

19. The approved organic growing media, 7 C.F.R. § 319.37-8(e)(1), in which greenhouse-grown plants may be imported under the Quarantine 37 provision (peat, sphagnum moss, and volcanic rock) and other damp absorbent material that is also authorized under the Quarantine 37 provision are well able to harbor biting midges, larvae, and other immature alien pests as noted in the Biological Assessment and in the Biological Opinion. These alien pests are tiny, exhibit cryptic behavior, and are highly mobile, thereby making detection at ports-of-entry extremely difficult, at best.

20. Animal and Plant Health Inspection Service concludes that the "screen mesh size required under the regulations in § 319.37-8(e) is sufficient to exclude all life stages of all quarantine pests of *Phalaenopsis* spp. orchids identified in our risk analysis, except for the crawler stage of *Planococcus minor*." 69 Fed. Reg. 24928 (2004). But there is sound scientific evidence, this from Rutgers Cooperative Extension, the State University of New Jersey, that greenhouse screening with a hole size not larg-

er than 0.1905 mm is required to exclude flower thrips. http://www.rce.rutgers.-edu/pubs/pdfs/fs640.pdf.

21. It is clear from the Administrative Record before Animal and Plant Health Inspection Service that identified *Thripidae* quarantine pests of *Phalaenopsis* spp. orchids in Taiwan, including *Dichromothrips* sp., *Frankliniella intonsa* (Trybom), *Frankliniella schultzei* (Trybom), and *Thrips palmi* Karny, will not be excluded from the supposed "pest-exclusionary" greenhouse by screening (the requirement is that the pest-exclusionary greenhouse must have screens on all vents and openings with hole sizes not more than 0.6 mm) even with hole sizes as small as 0.073 mm. Indeed, neither will the required 0.6 mm screen hole size exclude the mealybug, *Planococcus minor*, a quarantine pest, and one of the only two of thirty-five identified alien arthropod pests of *Phalaenopsis* spp. orchids in Taiwan that was deemed of significance by the Animal and Plant Health Inspection Service because *Planococcus minor* will spread along the pathway initiated by importation from Taiwan of finished, flowering *Phalaenopsis* spp. orchid plants in pots.

22. The Government of Taiwan has requested approval of the use of sphagnum moss as a growing medium. 63 Fed. Reg. 46403 (1998). Use of sphagnum moss as a

- 22 -

growing medium in greenhouses in Taiwan can vector a "hitch-hiker," a blood-sucking midge, *Forcipomyia taiwana*. This blood-sucking pest is very small (a very narrow body, and some 1.4 mm in length), and is distributed island-wide. A recent article in the JOURNAL OF MEDICAL ENTOMOLOGY, Volume 37, Number 2 (2000), "Distribution and Seasonal Occurrence of *Forcipomyia taiwana* (Diptera: Ceratopogonidae) in the Nantou Area in Taiwan," at pages 205-09, teaches that populations of *Forcipomyia taiwana* have increased rapidly, that *Forcipomyia taiwana* females deposit eggs on moist substrate, and that *Forcipomyia taiwana* adults aggregate in hedgerows and agricultural fields. Just as the required 0.6 mm screen opening for the supposed "pest exclusionary" greenhouse will exclude neither identified *Thripidae* quarantine pests of *Phalaenopsis* spp. orchids in Taiwan, nor the mealy-bug, *Planococcus minor*, so also will this required 0.6 mm screen opening not exclude *Forcipomyia taiwana* adult females, and these *Forcipomyia taiwana* adult females will find the treated sphagnum moss growing medium, kept moist to support ideal orchid culture in the greenhouses, an inviting place to deposit their eggs. *Forcipomyia taiwana* is just one species of blood-sucking midge endemic to Taiwan, and to China. This particular blood-sucking midge, known in Taiwan as "little

King Kong," has become a serious environmental problem in Taiwan. http://www.taipeitimes.com/News/taiwan/archives/2003/10/08/2003070855.    The larger genus is *Culicoides*, with 30 species in Taiwan, and another 80 species in China. Of the 1,400 *Culicoides* species known worldwide, 96 percent are obligate blood suckers. Only a screen opening smaller than 0.203 mm will prevent entry of *Culicoides*. Chemical control is usually futile. These blood-sucking midges are known to transmit both human pathogens and pathogens of domesticated and non-domesticated animals. *Culicoides* species are vectors of arboviruses, such as the West Nile virus. There are no *Culicoides* in Hawai`i. Biting midges can constitute a serious economic problem in coastal resort areas and in mountain areas. The bites cause itching and, in sensitive people, welts and lesions that last for several days.

23. Again, the Hawai`i Orchid Growers Association provided Comments, this time on July 9th, 2003. Comments were also submitted by the Society of American Florists, the Florida Nurserymen & Growers Association, the American Nursery & Landscape Association, the Hawai`i Department of Agriculture, and Hawai`i's Congressional Delegation.

24. On May 5th, 2004 Animal and Plant Health Inspection Service issued its Final Rule amending 7 C.F.R. § 319.37-8(e) to allow importation of *Phalaenopsis* spp. orchid plants from Taiwan established in an approved growing medium. 69 Fed. Reg. 24916-24936 (2004). Just as in the proposed Rule first published in 1998, Animal and Plant Health Inspection Service has imposed in the Final Rule no specific phytosanitary measures beyond the general program requirements contained in 7 C.F.R. § 319.37-8(e). 69 Fed. Reg. 24917 (2004).

25. And Animal and Plant Health Inspection Service has published, in accordance with 5 U.S.C. § 604(a), its Final Regulatory Flexibility Analysis. Animal and Plant Health Inspection Service now concludes that this Final Rule "will likely have a significant adverse economic impact on many U.S. growers of potted *Phalaenopsis* plants, many of whom are probably small entities," 69 Fed. Reg. 24932 (2004); that this Final Rule will possibly have an adverse economic impact "on U.S. growers of orchids other than *Phalaenopsis* spp. orchids, many of whom are also probably small in size," *Id.*; and that this Final Rule "may have adverse economic impacts on producers of other plants besides *Phalaenopsis* spp. orchids." 69 Fed. Reg. 24934 (2004). Animal and Plant Health Inspection Service has not considered, as suggest-

ed in Comments from Hawai`i Orchid Growers Association, and as suggested by other Commenters, specific phytosanitary measures to augment the general program requirements contained in 7 C.F.R. § 319.37-8(e). Apparently, Animal and Plant Health Inspection Service does not consider these suggested phytosanitary measures that would augment the general program requirements contained in 7 C.F.R. § 319.37-8(e) to be "significant alternatives." 5 U.S.C. § 604(a)(5). Ultimately, Animal and Plant Health Inspection Service says that "we do not believe continuing to prohibit the importation of *Phalaenopsis* from Taiwan is justified, since we have determined that *Phalaenopsis* from Taiwan can be imported in growing media without introducing plant pests or noxious weeds into the United States." 69 Fed. Reg. 24933 (2004). Neither is Animal and Plant Health Inspection Service concerned with a possible infestation in Hawai`i of *Forcipomyia taiwana*, one species of many blood-sucking midges endemic to Taiwan, and to China: "We do not believe that his action will have an impact on Hawaii's tourism industry because there is no evidence to suggest that the pests . . . will enter the United States in association with *Phalaenopsis* spp. plants imported in approved growing media from Taiwan." 69 Fed. Reg. 24934 (2004).

- 26 -

26. This Final Rule is effective June 4th, 2004. 69 Fed. Reg. 24916 (2004).

27. The Final Rule allows entry into the United States of finished, flowering *Phalaenopsis* spp. orchid plants from Taiwan established in pots containing approved growing media. 69 Fed. Reg. 24936 (2004). Finished, flowering *Phalaenopsis* spp. orchid plants in pots have put out flower spikes. Scientific literature teaches that orchid flower spikes increase pest risk because they provide a habitat for mites, mealybugs, blossom midges, thrips, and other blossom-infesting organisms. Hara, A. H. and Hata, T. Y., "Pests and Pest Management," pages 34 through 36, and 40, in K. Leonhardt and K. Sewake, *Growing Dendrobium Orchids in Hawai`i*, Production and Management Guide, College of Tropical Agriculture and Human Resources, University of Hawai`i at Manoa (1999).

The Hawai`i Growers.

28. There are about 150 active growers in Hawai`i depending on epiphytic orchids for economic existence, and another 100 active growers that rely on epiphytic orchids to supplement their income. All are small businesses, and a typical grower has some 10 employees, involving about 3,000 people in this industry. Hawai`ian orchid growers import many of the orchid seedlings that they use to establish potted epiphytic or-

chid plants. Most epiphytic orchid seedlings are imported bare-root, having been pre-
viously transferred out of sterile flasks and grown in-vivo for three to nine months,
else they are imported growing in agar or other transparent or translucent tissue cul-
ture medium and still contained in sterile flasks. 7 C.F.R. § 319.37-8(c). Prior to June
4, 2004 international trade in *Phalaenopsis* spp. orchid plants was limited to such
bare-root seedlings, ergo non-flowering orchid plants. 63 Fed. Reg. 46405 (1998).

29. It takes some fifteen months on a nursery bench to establish an epiphytic or-
chid seedling in a pot as an orchid plant. Over and above the cost of the orchid seed-
ling, it costs between $0.12 and $0.15 per month to raise the plant domestically. The
process requires considerable hand labor, and it does not lend itself to automation.
Finished potted epiphytic orchid plants are sold to other Hawai`ian growers/shippers
at wholesale prices, direct to Mainland retailers with freight paid by the retailers, or to
Mainland nurseries or distributors, again with freight paid by the Mainland nursery or
distributor. Shipments are typically by overnight express carrier. Wholesale prices for
potted epiphytic orchid plants range between $4.00 and $8.50. Potted epiphytic orchid
plants are sold at retail for prices ranging $12.00 and $30.00.

30. Hawai`i itself has been exempt from "economic prosperity" as it is experienced on the Mainland. The Hawai`ian economy has been severely impacted by loss of tourists from Japan and Korea; by military base closures and realignments; by severely curtailed pineapple and sugar production, the latter due to foreign competition that benefits from cheaper labor; and from privatization initiatives ranging from Europe to India to Latin America that offer opportunities for those seeking access to lower-cost production. East Hawai`i, the area around the city of Hilo on the moist, windward side of the Big Island, Hawai`i, has been especially hard-hit economically by sugar plantation closures, and has always lacked a tourism base due to its heavy rainfall and dearth of beaches. And it is East Hawai`i in which the domestic orchid industry has shown its most explosive growth, more than tripling in acreage in orchid cultivation in the last 10 years—due to low land costs, a favorable tropical climate, and an abundant supply of pure water.

31. The point of domestic re-growing of imported *Phalaenopsis* spp. seedlings is to allow the orchid plants to put out flower spikes—orchid seedlings or orchid plants without flower spikes have little or no retail value. The domestic trade in all species of potted epiphytic orchids focuses on flowering plants. Orchids are the pacesetter in

Hawai`i's sales of flower and nursery products, last valued (in 2001) by the Hawai`i Department of Agriculture at $87,976,000. In calendar year 2002, domestic wholesale orchid sales were approximately $106,000,000, and the only flowering potted plant crop with a higher value was poinsettia. The American Orchid Society estimates that seventy-five percent of all potted orchid plants produced in the domestic trade are of the genus *Phalaenopsis*. Orchid growing is an international business: large-scale production of finished, flowering *Phalaenopsis* spp. orchid plants is occurring in China, Germany, Japan, the Netherlands, the United States, and Taiwan. Unlike all other ornamental crops, orchid sales have increased during the last five years.

32. Plaintiffs are residents of the State of Hawai`i, and Hawai`i is in a tropical climate. Residents of a tropical climate are frequently lightly dressed, and not often well-protected from the environment, or from pests in that environment. There are three species of native Hawai`ian orchids, one of which, *Platanthera holochila*, is listed as an Endangered Species, and the others, *Anoectochilus sandvicensis* and *Liparis hawaiiensis*, are both Species of concern. The Fish and Wildlife Service, United States Department of the Interior has made it clear that the Final Rule may be detrimental to these native Hawai`ian orchids by altering critical conditions required for their suc-

- 30 -

cessful germination, growth, and reproduction, and has made it clear that possible infestations in Hawai`i of *Thripidae* pests of *Phalaenopsis* spp. orchids from Taiwan (also in a tropical climate) are an "area" of "residual concern." Each day, Plaintiffs have the opportunity to observe the native Hawai`ian orchids. Indeed, because of their avocational interest in *Orchidaceae*, Plaintiffs are more likely than other people to make such observations. Defendant Animal and Plant Health Inspection Service's representations in response to the "residual concern" of the Fish and Wildlife Service, United States Department of the Interior, representations that are the basis for one of Plaintiffs' claims here for relief under the Endangered Species Act, have at least caused a demonstrable increase in the risk that the native Hawai`ian orchids may be infested by invasive *Thripidae* pests of *Phalaenopsis* spp. orchids brought to Hawai`i in pots from Taiwan.

33. The blood-sucking midge *Forcipoymia taiwana*, known in Taiwan as "little King Kong," and a serious environmental problem there, may well invade Hawai`i through eggs laid in the sphagnum moss in which maturing *Phalaenopsis* spp. orchids are cultivated in greenhouses in Taiwan, sphagnum moss that will be allowed entry into Hawai`i with mature potted *Phalaenopsis* spp. orchid plants. Once in tropical Ha-

wai`i, it is substantially probable that *Forcipoymia taiwana* will become no less of a pest than it is in tropical Taiwan, biting those lightly-clothed folk who work about greenhouses cultivating orchids no less frequently than those who seek to enjoy a day on the beach are bitten.

34. It is also certainly true that beyond their claims of personal injury as residents in the human environment of Hawai`i (which is not now infested with blood-sucking midges), residents who have daily opportunities to observe native Hawai`ian orchids, Plaintiffs have claims of economic injury that arise from their avocation. Plaintiffs have heretofore enjoyed a business advantage from domestic sales of mature potted *Phalaenopsis* spp. orchid plants, a business advantage which Defendants admit, in their Economic Analysis, will soon disappear under the Final Rule with the importation from Taiwan of mature potted *Phalaenopsis* spp. orchid plants. But this is not the only economic injury of Plaintiffs that is at issue here. Plaintiffs would also have an economic injury if they could not produce nursery products in a domestic environment free from invasive alien plant pests, and it is freedom from this economic injury, not promotion of international trade in agricultural products, which is the paramount purpose of the Plant Protection Act. *See, e.g.*, 7 U.S.C. §§ 7701(1) ("protection of the

agriculture, environment, and economy of the United States"), 7701(3) ("facilitate exports, imports, and interstate commerce in agricultural products . . . in ways that will reduce, to the extent practicable . . . the risk of dissemination of plant pests"), and 7701(8) ("existence on any premises in the United States of a plant pest . . . could constitute a threat to crops and other plants . . . and burden interstate commerce or foreign commerce"); H.R. REP. NO. 106-402, at 14-15 (2000) (One of the main goals of the Plant Protection Act is to "[s]afeguard America's abundant plant resources from invasive plant pests.").

35. Plaintiffs' avocation, growing out immature imported bare-rooted *Phalaenopsis* spp. orchid seedlings in pots of sphagnum moss and then selling mature potted *Phalaenopsis* spp. orchid plants in the domestic trade, is an object of the Final Rule, just as Defendant Animal and Plant Health Service has confirmed in its representations to the Fish and Wildlife Service, United States Department of the Interior: "*Phalaenopsis* has been imported bare root into the United States for at least 20 years. During that time no problems with pests on *Phalaenopsis* have arisen. The importation has amounted to a long-term uncontrolled experiment." Plaintiffs will be economically devastated from the need to invest in the expensive, and labor-intensive, sanitary and

phytosanitary treatments of existing greenhouse orchid stocks needed to combat invasive alien plant pests introduced with mature potted *Phalaenopsis* spp. orchid plants from Taiwan that will spread along the importation pathway into south Florida, into Hawai`i, and into the tropical Territories and Commonwealths associated with the United States. This certain economic injury to the Plaintiffs is precisely the interest that the Plant Protection Act is designed to protect, and Plaintiffs' avocation is indeed an object of the Final Rule—thus there can be no question of Plaintiffs' standing to challenge the Final Rule.

36. Plaintiffs' challenges to the Final Rule will indeed be redressed by a favorable decision in this Civil Action. It is not just that Defendants have performed procedural steps in an incorrect or inaccurate manner—Defendants have overlooked the creation of demonstrable risk to Plaintiffs' particularized personal and economic interests, and it is likely that a second, proper review of Taiwan's importation request, and a second, proper consultation to assess the potential effects of any newly-proposed Rule on Federally-listed or proposed Endangered or Threatened Species or their habitats will correct these errors and will impose additional phytosanitary measures such that Plaintiffs' economic interests are protected from invasive plant pests, Plaintiffs are protect-

ed from invasive alien pests of the human environment, and the native Federally-list-

ed Endangered Hawai`ian orchids are secure.

37. Plaintiffs have already been held to have standing to challenge the Final Rule,

*Hawai`i Orchid Growers Assoc.,* 2005 U.S. Dist. LEXIS 4548, at *8 - *16, and this rul-

ing should control here.

   <u>Endangered Species</u>.

38. Section 7(a) of the Endangered Species Act, 16 U.S.C. § 1536(a)(2), requires in-

teragency consultations, for terrestrial species, with the Fish and Wildlife Service,

United States Department of the Interior so at to "insure that any action authorized,

funded, or carried out by such agency . . . is not likely to jeopardize the continued

existence of any endangered species or threatened species or result in the destruction

or adverse modification of habitat of such species." Regulations implementing this

substantive legal requirement that Agencies ensure that proposed Agency action will

not likely jeopardize Federally-listed or proposed Endangered or Threatened Species

or their habitats require:

   The Federal agency requesting formal consultation shall provide the Service
   with the best scientific and commercial data available or which can be ob-
   tained during the consultation for an adequate review of the effects that an

action may have upon listed species or critical habitat. This information may include the results of studies or surveys conducted by the Federal agency or the designated non-Federal representative. The Federal agency shall provide any applicant with the opportunity to submit information for consideration during the consultation.

50 C.F.R. § 402.14(d).

39. After Animal and Plant Health Inspection Service initiated interagency consultations with the Fish and Wildlife Service, United States Department of the Interior in October 2002, the Fish and Wildlife Service "identified two areas of residual concern," one of which was as follows:

> It is not clear why the several species of quarantine pest thrips were eliminated from consideration as pests that are likely to follow the importation pathway. The phytosanitary measures do not appear to adequately address the potential for infestation of thrips, resulting in a substantial risk of the organisms entering greenhouse units, openings, and vent coverings. Specifically, the prescribed screening mesh size does not appear fine enough to exclude thrips from growing areas. Please provide an explanation why these species of thrips were dropped from the list of quarantine pests, and the rationale for the prescribed screening mesh size.

40. At a conference convened on April 2nd and 3rd, 2003 Animal and Plant Health Inspection Service responded to this "residual concern" as follows:

> Thrips is a pest of Orchidaceae in Taiwan; however, there is no evidence in either the scientific literature or from the interceptions at APHIS plant inspection stations that thrips is a pest on *Phalaenopsis*. PPQ ran a search on their

- 36 -

database for thrips interceptions on *Phalaenopsis* from Taiwan. No intercep-
tions turned up. . . . *Phalaenopsis* has been imported bare root into the United
States for at least 20 years. During that time no problems with pests on Pha-
laenopsis have arisen. The importation has amounted to a long-term uncon-
trolled experiment.

41. On April 3rd, 2003 Animal and Plant Health Inspection Service, responding to

this "residual concern," wrote the Fish and Wildlife Service, United States Department

of the Interior, as follows:

> The thrips identified in the pest risk assessment (PRA) were not considered
> for several reasons. The extensive literature searches APHIS conducted re-
> vealed that none of the thrips identified in the PRA have ever been reported
> on Phalaenopsis. Furthermore, a review of pest interceptions made over the
> past eight years on bare-rooted Phalaenopsis plants from Taiwan show that
> thrips have not been intercepted. . . .

42. These representations by Animal and Plant Inspection Service were not the

"best science" required by 50 C.F.R. § 402.14(d). These representations by Animal and

Plant Health Inspection Service to the Fish and Wildlife Service, United States Depart-

ment of the Interior were wrong and untruthful.

43. The Risk Assessment prepared by Animal and Plant Health Inspection Service

in April 1997 had already reported, from a literature search, and from review of Ani-

mal and Plant Health Inspection Service interception records, that the following alien

pests were "associated" with *Phalaenopsis* spp. from Taiwan: *Dichromothrips* sp., *Frankliniella intonsa*, *Frankliniella schultzei*, Phlaeothripidae sp., Thripidae, sp., *Thrips hawaiiensis*, and *Thrips palmi*. The Hawai`i Orchid Growers Association's Comments submitted on November 30th, 1998 had carefully explained that the required 0.6 mm screen hole size would not exclude the *Thripidae* quarantine pests of *Phalaenopsis* spp. orchids in Taiwan that had been identified in the Risk Assessment. And in Comments from the Hawai`i Department of Agriculture submitted on November 25th, 1998 Hawai`i Department of Agriculture had reported that in 1993 it had allowed an importation of 50,000 bare root *Phalaenopsis* spp. orchids into Hawai`i under a special permit whereby the plants were obtained from flasked material, the greenhouses in Taiwan were enclosed by screen and doors, and Hawai`i Department of Agriculture inspectors had traveled to Taiwan and there inspected and approved "each and every Phalaenopsis plant for packing." Nonetheless, several pests were intercepted by Animal and Plant Health Inspection Service when the bare root plants were presented for entry into the United States, and even more pests were found after these plants were thereafter grown-out in a quarantine house in Hawai`i for the then-

required period of sixty days post-entry quarantine. One of these later-emerging alien pests was an Asian tiger mosquito, *Aedes albopictus*, family *Culicidae*.

44. These wrong and untruthful representations by Animal and Plant Health Inspection Service to the Fish and Wildlife Service, United States Department of the Interior were not the "best science" required by 50 C.F.R. § 402.14(d). Lacking the "best science" required by 50 C.F.R. § 402.14(d), the determination by the Animal and Plant Health Inspection Service, after consultations with the Fish and Wildlife Service, United States Department of the Interior, that the Final Rule will not adversely affect Federally-listed or proposed Endangered or Threatened Species or their habitats is unlawful. *Hawai`i Longline Association v. National Marine Fisheries Service*, 281 F. Supp. 2d 1, 26 (D.D.C. 2003).

COUNT I
DEFENDANT ANIMAL AND PLANT HEALTH INSPECTION SERVICE'S
DETERMINATION THAT THE FINAL RULE WILL NOT ADVERSELY
AFFECT FEDERALLY-LISTED OR PROPOSED ENDANGERED OR
THREATENED SPECIES OR THEIR HABITATS IS ARBITRARY
AND CAPRICIOUS, AN ABUSE OF DISCRETION,
AND UNLAWFUL.

45. Plaintiffs incorporate and re-allege paragraphs numbers 1. through 44. hereinabove as if fully set forth herein.

46. Defendant Animal and Plant Health Inspection Service did not disclose to the Fish and Wildlife Service, United States Department of the Interior all that Defendant Animal and Plant Health Inspection Service knew about adverse impacts of the Final Rule on Federally-listed or proposed Endangered or Threatened Species or their habitats.

47. The honesty oath of witnesses, to provide "the truth, the whole truth, and nothing but the truth," is a staple of procedure dating back to English trials in the 13th Century, and this honesty oath informs the question here—just what is required to be provided with consultations using "the best scientific and commercial data available?" Certainly it is at least the whole truth. In the case of consultations about possible effects on terrestrial Federally-listed or proposed Endangered or Threatened Species or their habitats, these must include any Comments received from private parties. This is what the implementing regulation, 50 C.F.R. § 402.14(d), clearly requires.

48. In *Resources Limited, Inc. v. Robertson*, 35 F.3d 1300, 1304-05 (9th Cir. 1994), the consulting Federal Agency "selectively withheld" from Fish and Wildlife Service, United States Department of the Interior in-house data which showed adverse impacts of high-level timber harvests on grizzly bears. Thus the *Resources Limited* court

held that the consulting Federal Agency could not lawfully decide that the planned high-level timber harvests would not adversely affect Federally-listed or proposed Endangered or Threatened Species or their habitats. Put another way, there cannot be an "adequate review" unless the whole truth is provided. Defendant Animal and Plant Health Inspection Service did not provide the whole truth to the Fish and Wildlife Service, United States Department of the Interior. Thus Defendant Animal and Plant Health Inspection Service's determination that the Final Rule will not adversely affect Federally-listed or proposed Endangered or Threatened Species or their habitats is arbitrary, capricious, an abuse of discretion, and unlawful.

COUNT II

DEFENDANT FISH AND WILDLIFE SERVICE'S CONCURRENCE WITH THE
DETERMINATION THAT THE FINAL RULE WILL NOT ADVERSELY AFFECT
FEDERALLY-LISTED OR PROPOSED ENDANGERED OR THREATENED SPECIES
EFFECTS AN UNLAWFUL "TAKING."

49. Plaintiffs incorporate and re-allege paragraphs numbers 1. through 44. hereinabove as if fully set forth herein.

50. Scientific studies prepared for the Fish and Wildlife Service, United States Department of the Interior in connection with the project to repave and strengthen the runways at Kahului Airport demonstrate that the Final Rule jeopardizes the continued

existence of Federally-listed or proposed Endangered or Threatened Species or their habitats. Particularly, these scientific studies show that Hawai`i will be invaded, through the introduction of suitable breeding habitats, by alien species from Taiwan. These suitable breeding habitats are the approved organic growing media, 7 C.F.R. § 319.37-8(e)(1), in which greenhouse-grown plants may be imported under the Quarantine 37 provision (peat, sphagnum moss, and volcanic rock) and other damp absorbent material that is also authorized under the Quarantine 37 provision. The alien pests that will invade Hawai`i from Taiwan include *Forcipomyia taiwana,* little King Kong; *Thripidae* quarantine pests of *Phalaenopsis* spp. orchids in Taiwan; and the mealybug, *Planococcus minor.* These scientific studies show that the impact of the invasion of these alien species from Taiwan will include, in addition to predation, herbivory parasitism and competition, interference with pollination, promotion of disturbances such as fire, and change in nutrient regimes, and will favor the spread of other alien species. *Palila v. Hawai`i Department of Land and Natural Resources*, 852 F.2d 1106, 1108 (9th Cir. 1988) ("Taking" includes actions other than direct physical injury).

51. The value of Hawai`i's Federally-listed or proposed Endangered or Threatened Species and their habitats is "incalculable," just as Congress has supposed. *Bob House v. United States Forest Service,* 974 F. Supp. 1022, 1028 (E.D. Ky. 1997). A "Taking" of Federally-listed Endangered or Threatened Species includes "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19). "Harm" may be demonstrated by scientific studies, and this "harm" need not have already occurred—a reasonably certain threat of imminent harm, just as is shown in the scientific studies prepared for the Fish and Wildlife Service, United States Department of the Interior in connection with the project to repave and strengthen the runways at Kahului Airport, is sufficient for injunctive relief under the Endangered Species Act. *Bob House*, 974 F. Supp., at 1029-1032. A "Taking" occurs when challenged Agency action has "some prohibited impact on an endangered species." *Defenders of Wildlife v. Administrator, Environmental Protection Agency*, 882 F.2d 1294, 1301 (8th Cir. 1989), *citing Palila Hawai`i Department of Land and Natural Resources*, 639 F.2d 495, 497 (9th Cir. 1981). The Final Rule is an unlawful "Taking" of Hawai`i's Federally-listed or proposed Endangered or Threatened Species and their habitats in violation of 16 U.S.C. § 1538(a).

COUNT III

DEFENDANT FISH AND WILDLIFE SERVICE'S CONCURRENCE WITH THE
DETERMINATION THAT THE FINAL RULE WILL NOT ADVERSELY AFFECT
FEDERALLY-LISTED OR PROPOSED ENDANGERED OR THREATENED SPECIES
ARBITRARILY AND CAPRICIOUSLY DISREGARDS THE RISK OF
INTRODUCTION OF SUITABLE BREEDING HABITATS.

52. Plaintiffs incorporate and re-allege paragraphs numbers 1. through 44. herein-above as if fully set forth herein.

53. Scientific studies prepared for the Fish and Wildlife Service, United States Department of the Interior in connection with the project to repave and strengthen the runways at Kahului Airport focus on the risk of invasion by alien species through introduction of suitable breeding habitats, not, as in the Final Rule, on the risk that might be imposed through introduction of specific hosts, here, finished, flowering *Phalaenopsis* spp. orchid plants in pots from Taiwan. The Fish and Wildlife Service, United States Department of the Interior, did not regard this different focus when it concurred with Defendant Animal and Plant Health Inspection Service's determination that the Final Rule will not adversely affect Federally-listed or proposed Endangered or Threatened Species.

54. The Endangered Species Act imposes a duty on all Federal Agencies to "conserve" Federally-listed Endangered Species and Threatened Species, i.e., a duty to insure that Federal actions do not jeopardize the continued existence of Endangered Species and Threatened Species or critical habitat. 16 U.S.C. § 1531(c)(1); *National Audubon Society, Inc. v. Gray Davis*, 307 F.3d 835, 852 (9th Cir. 2002).

55. The failure of the Fish and Wildlife Service, United States Department of the Interior to regard the risk of invasion of alien species from Taiwan through introduction of suitable breeding habitats, a risk identified in scientific studies performed for the Fish and Wildlife Service, United States Department of the Interior, was arbitrary, capricious, and an abuse of discretion, all in violation of 16 U.S.C. § 1531(c)(1).

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request: (a) that this Court declare as arbitrary, capricious, an abuse of discretion, and unlawful the Defendant Animal and Plant Health Inspection Service's determination that the Final Rule will not adversely affect Federally-listed or proposed Endangered or Threatened species or their habitats; (b) that this Court order the Defendant Animal and Plant Health Inspection Service, through a Permanent Injunction, to rescind the addition of *Phalaen-*

- 45 -

*opsis* spp. from Taiwan to the list of plants that may be imported in an approved growing medium subject to the growing, inspection, and certification requirements specified in 7 C.F.R. § 319.378(e); (c) that this Court declare that the Final Rule is an unlawful "Taking" of Hawai`i's Federally-listed or proposed Endangered or Threatened Species and their habitats; (d) that this Court declare as arbitrary, capricious, an abuse of discretion, and unlawful Defendant's Fish and Wildlife Service, United States Department of the Interior concurrence with the Final Rule; and (e) that this Court grant such other and further relief as may be just and proper.

With aloha,

/s/ Cyrus E. Phillips, IV

_____
Cyrus E. Phillips, IV
D.C. Bar Number 456500

1828 L Street, N.W., Suite 660
Washington, D.C. 20036-5112
Telephone:      (202) 466-7008
Facsimile:      (202) 466-7009
Electronic Mail: *lawyer@procurement-lawyer.com*

Attorney of record for Plaintiffs,
Hawai`i Orchid Growers Association.

- 46 -