# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HAWAI'I ORCHID GROWERS ASSOCIATION,    ) | |
| ) | |
| Plaintiff,    ) | |
| ) | Civil Action No. 05-1182 (RCL) |
| ) | |
| ) | |
| UNITED STATES DEPARTMENT OF AGRICULTURE; ) | |
| MIKE JOHANNS, SECRETARY OF AGRICULTURE;   ) | |
| W. RON DEHAVEN, ADMINISTRATOR, ANIMAL   ) | |
| AND PLANT HEALTH INSPECTION SERVICE;    ) | |
| UNITED STATES DEPARTMENT OF THE INTERIOR; ) | |
| GALE NORTON, SECRETARY OF THE INTERIOR;   ) | |
| MATTHEW J. HOGAN, ACTING DIRECTOR, UNITED ) | |
| STATES FISH AND WILDLIFE SERVICE,    ) | |
| ) | |
| Defendants.    ) | |
| _____) | |

## DEFENDANTS' MOTION TO DISMISS

Defendants hereby file this motion to dismiss Counts II and IV of the Amended

Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  The arguments

in support of the motion are contained in the memorandum below.

Dated: October 7, 2005

Respectfully submitted,
KELLY A. JOHNSON
Acting Assistant Attorney General
Environment & Natural Resources Division
United States Department of Justice


_____/s/_____
DONNA S. FITZGERALD
Connecticut Bar #411810
Trial Attorney
General Litigation Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington D.C. 20044-0663
Phone:  (202) 305-0476
Fax: (202) 305-0506

E-mail: Donna.Fitzgerald@usdoj.gov

OF COUNSEL:

Darlene Bolinger
Attorney Advisor General
Regulatory Division
Office of the General Counsel
United States Department of Agriculture
Rm 2319 South Building
1400 Independence Ave., SW
Washington, DC 20250-1400


Peg Romanik, Attorney
Office of the Solicitor
Division of Parks & Wildlife
United States Department of the Interior
1849 C. St., N.W., MS 6557
Washington D.C. 20240

ATTORNEYS FOR DEFENDANTS

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HAWAI'I ORCHID GROWERS ASSOCIATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 05-1182 (RCL) |
| | ) | |
| | ) | |
| UNITED STATES DEPARTMENT OF AGRICULTURE; | ) | |
| MIKE JOHANNS, SECRETARY OF AGRICULTURE; | ) | |
| W. RON DEHAVEN, ADMINISTRATOR, ANIMAL | ) | |
| AND PLANT HEALTH INSPECTION SERVICE; | ) | |
| UNITED STATES DEPARTMENT OF THE INTERIOR; | ) | |
| GALE NORTON, SECRETARY OF THE INTERIOR; | ) | |
| MATTHEW J. HOGAN, ACTING DIRECTOR, UNITED | ) | |
| STATES FISH AND WILDLIFE SERVICE, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**

2

Defendants move to dismiss Counts II and IV of the Amended Complaint for several reasons. First, plaintiff failed to comply with the jurisdictional requirement of the Endangered Species Act that requires 60 days advance notice of an intent to sue. Second, even if plaintiff could demonstrate it provided proper notice, the Court would still lack jurisdiction over each of the claims. Count II improperly alleges that the Secretary, through the Fish and Wildlife Service, in her capacity as administrator of the ESA is subject to a citizen suit for violation of the ESA take prohibition. Plaintiff's claim lies outside the boundaries of the narrow waiver of sovereign immunity for citizen suits under the ESA, and thus jurisdiction is lacking.

In Count IV, plaintiff seeks to enforce compliance not with any requirement of the ESA, but with the ESA's Congressional policy statement. The citizen suit does not waive immunity to such an attempt to enforce broad policy direction, and plaintiff fails to state a claim.

Alternatively, Count IV should be dismissed because it alleges violation of a federal-state agency Memorandum of Understanding which explicitly states that it does not grant enforcement rights against the government to third parties.

## I. FACTUAL BACKGROUND

### A. The Final Rule

This is the second lawsuit plaintiff has brought challenging a 2004 Final Rule promulgated by the Animal and Plant Health Inspection Service ("APHIS"), a sub-agency within the United States Department of Agriculture ("USDA"). In that rule, APHIS amended regulations governing the importation of plants and plant products to add orchids of the genus Phalaenopsis from Taiwan to the list of plants that may be imported in an approved growing medium, subject to specified growing, inspection, and certification requirements. Final Rule, 69

Fed. Reg. 24,916 (May 5, 2004).  APHIS promulgated the Rule in response to a request from

Taiwan, and after determining that <u>Phalaenopsis</u> species plants from Taiwan established in

approved growing media can be imported without resulting in the introduction into the United

States, or the dissemination within the United States, of a plant pest or noxious weed.  <u>Id</u>.

     APHIS first proposed an amendment on September 1, 1998 that would have allowed the

import of <u>Phalaenopsis</u> plants established in an approved growing media.  <u>Id</u>. at 24,916.  In

response to comments on the proposed rule, APHIS narrowed the application of the rule to

imports from Taiwan only, and entered into consultation with the United States Department of

the Interior, ("DOI"), Fish and Wildlife Service ("FWS") to assess the potential effects of the

proposed action on endangered and threatened species, as required under section 7 of the

Endangered Species Act (ESA), 16 U.S.C. § 1536.  <u>Id</u>.  On April 7, 2003, the FWS concluded

the section 7 consultation process by concurring with APHIS's determination that the

importation of <u>Phalaenopsis</u> species orchids from Taiwan in approved growing media will not

adversely affect federally listed or proposed endangered or threatened species or their habitats.

<u>Id</u>.

     In October, 2003, APHIS sent FWS a letter requesting initiation of informal

programmatic consultation under the ESA regarding the importation of plans established in

approved growing media and produced in accordance with Plant Protection and Quarantine

Requirements.  October, 2003 Letter from Lee Ann Thomas, Acting Director, APHIS to Gary

Frazer, Assistant Director, Endangered Species, Fish and Wildlife Service (Exh. 2 hereto).

APHIS also submitted documents in support of the requested consultation, including the risk

4

analysis APHIS had prepared regarding the importation of <u>Phalaenopsis</u> plants in approved growing media from Taiwan. <u>Id</u>. APHIS noted that the mitigation measures described in the documents submitted had "proven effective in similar programs, [and] will effectively mitigate potential pest risks and will protect threatened and endangered species and their habitats." <u>Id</u>.

FWS responded in March, 2004, stating that it interpreted APHIS's subsequent submission of documents to indicate that APHIS also wanted to re-initiate section 7 consultation on two APHIS actions, one of which was the proposed rule allowing import of <u>Phalaenopsis</u> species orchids from Taiwan.[1]  (Letter attached as Exh. 3 hereto.)   The letter notes that the re-initiation and incorporation of the two previous individual consultations into one programmatic consultation, evaluating a proposed program to import plants established in APHIS-approved growing media and produced in accordance with requirements set forth by the Plan Protection and Quarantine regulations found at 7 C.F.R. § 319.37, would provide a "consistent foundation for future requests for plant importation in APHIS-approved growing media." March 18, 2004 Letter at 1.

The March 18, 2004 letter went on to make recommendations and ask questions of APHIS. <u>Id</u>. at 2-3.  APHIS responded to FWS in a letter dated June 2, 2004, and by letter dated September 1, 2004, FWS stated that the June 2, 2004 correspondence from APHIS addressed the FWS recommendations, and that it was concluding the section 7 consultation on the proposed program to import plants established in APHIS-approved growing media and produced in accordance with requirements set forth at 7 C.F.R. § 319.37 to prevent the introduction of quarantine pests into the United States.  Letters attached hereto as Exhibits 4, 5.

_____

[1]Defendants attach a series of correspondence as background material for the Court.

**2. Plaintiff's Prior Lawsuit.**

In its first lawsuit, filed June 4, 2004 in this District, plaintiff argued that APHIS's Final

Rule was arbitrary and capricious and not based on sound science, that APHIS had violated the

National Environmental Policy Act, 42 U.S.C. § 4321, and that APHIS had violated the

Endangered Species Act's (ESA) requirement to use  the best science available in its ESA

consultation with the FWS.  Second Amended Complaint filed in Hawaiian Orchid Grower's

Association v. USDA, Civil No. 04-914 (JR) (D.D.C.), Docket No. 14.  Plaintiff moved for a

preliminary injunction and for summary judgment.  Docket Nos. 3 & 17 in Hawaiian Orchid

Grower's Association v. USDA, Civil No. 04-914 (JR) (D.D.C.).

Defendants' response and cross-motion for summary judgment raised the jurisdictional

defenses of lack of standing under the Plant Protection Act, NEPA, and the ESA, and failure to

comply with the ESA's 60 day notice of intent to sue.  Docket No. 22.  The government also

argued that the final rule was not arbitrary or capricious, and that APHIS had complied with

NEPA and the ESA in its promulgation of the rule.  Id.

The Court denied the government's motion to dismiss for lack of standing, but granted

the government's motion to dismiss plaintiff's ESA challenge on the grounds that plaintiff had

not provided the requisite 60 days advance notice of its intent to sue.  Docket Nos. 30 & 31.  On

the merits, the Court held that the government did not act in an arbitrary or capricious manner,

and did not violate NEPA, and the court granted defendants' motion for summary judgment and

denied plaintiff's motion for summary judgment.  Id.

**3. Plaintiff's March 31, 2005 Notice of Intent to Sue Under the ESA.**

On March 31, 2005, plaintiff sent a letter to the Secretaries of Interior and Agriculture,

and to U.S. Fish and Wildlife Service Acting Director Matt Hogan and APHIS Administrator W. Ron DeHaven, informing them of plaintiff's intent to file suit under the Endangered Species Act. March 31, 2005 Letter from Mr. Cyrus E. Phillips, IV, Attorney at Law to Gale Norton, Secretary of the Interior, Mike Johanns, Secretary of Agriculture, Matt Hogan, Acting Director, FWS, and W. Ron DeHaven, Administrator, APHIS (Letter attached hereto as Exh. 6). According to the letter, the purported failure of APHIS to share certain information with FWS during its ESA consultation on the Final Rule means that the FWS's concurrence that the Final Rule was not likely to adversely impact threatened or endangered species or their habitat was not based on the "best science," as required by the ESA, 16 U.S.C. § 1536(a)(2). Letter at 3-5.

The letter also stated that USDA and DOI had violated Section 2(c)(1) of the ESA by failing to ensure that the Final Rule conserves endangered and threatened species and does not jeopardize their continued existence or their habitat, and that USDA and DOI had engaged in and will continue to engage in a "take" of endangered and threatened species. Letter at 2. The letter provided no explanation in support of these arguments. Id.

### 4. Plaintiff's Amended Complaint

In this lawsuit, plaintiff again challenges the 2004 Final Rule. Plaintiff brings four counts against the Secretaries of Interior and Agriculture, the Acting Director of FWS, and the Administrator of APHIS. In Count I, plaintiff contends that the conclusion in APHIS's "Biological Opinion"[2] that the Final Rule will not adversely affect federally-listed or proposed endangered or threatened species or their critical habitat is arbitrary and capricious, an abuse of

---

[2]APHIS actually prepared a Biological Evaluation as part of the informal consultation process with FWS. A "Biological Opinion" is a document prepared by the FWS when it engages in "formal consultation" with an agency. 50 C.F.R. § 402.14.

discretion, and unlawful because APHIS purportedly did not disclose to the United States FWS

"all that [APHIS] knew about adverse impacts" of the proposed rule on federally-listed or

proposed Endangered or threatened species and their critical habitat.  Amd. Compl. At ¶ 58.

 In Count II, plaintiff contends that APHIS's Biological Evaluation and the FWS's

concurrence with it effects an "unlawful taking," because scientific studies prepared for the

Federal Aviation Administration ("FAA") with regard to a proposed runway expansion at an

airport on Maui purportedly show that "California, Hawai'i, south Florida, and the tropical

Territories and Commonwealths associated with the United States will be invaded by alien

species from Taiwan through the introduction of suitable breeding habitats."  Compl. At ¶ 63.

According to plaintiff, the "suitable breeding habitats" are the approved organic growing media

in which greenhouse grown plants may be imported under APHIS's regulations, and the "alien

pests" that will invade Hawaii include thrips, <u>Forcipomyia taiwana</u>, and <u>Planococcus minor</u>.

Amd. Compl. At ¶ 63.

 In Count II, plaintiff also faults the FWS for purportedly not considering its own

recommendations submitted to the Hawaii Ant Group regarding Hawaii's "unique ecology."

Amd. Compl. at ¶ 66.  According to plaintiff, this alleged failure violates the ESA regulations at

50 C.F.R. § 402.14(g),[3] and also effects a taking of Hawaii's federally-listed or proposed or

endangered or threatened species and their critical habitat.

 In Count III of the Amended Complaint, plaintiff contends that the FWS concurrence

with APHIS's Biological Evaluation is arbitrary and capricious because various "[s]cientific

---

 [3]The regulations at 50 C.F.R. § 402.14(g) identify FWS responsibilities during formal
consultation.  These regulations do not apply, however, as APHIS and FWS engaged in informal
consultation.

studies prepared for the Federal Aviation Administration . . . " in regard to the expansion of runways at Kahului Airport on Maui purportedly focused on the "risk of invasion by alien species through introduction of suitable breeding habitat, . . . .." Amd. Compl. At ¶ 68. Plaintiff contends that FWS did not undertake this same analysis when it engaged in consultation with APHIS on its 2004 Final Rule, and therefore, its concurrence is arbitrary and capricious. Amd. Compl. at ¶ 68.

Finally, in Count IV of its Amended Complaint, plaintiff contends that defendants have breached "their obligations" under both a Memorandum of Understanding between federal and State of Hawaii agencies, and a Federal-State Alien Species Action Plan that is incorporated into the MOU. Amd. Compl. at ¶ 72. The MOU, which is Attachment 3 to the Amended Complaint, resulted from ESA consultations conducted for the improvements of facilities at the Kahului Airport in Maui, and the stated goal of the MOU is to prevent the introduction of alien species into Maui via the Kahului Airport in Maui. MOU at 1-2. The MOU explicitly states that it does not create any enforceable rights or benefits against the United States or its agencies or officers. MOU at ¶ VII. Instead, it is "intended to improve the internal management of the executive branch." Id.

## II. LEGAL BACKGROUND

### The Endangered Species Act

### 1. Section 7 Consultation

In the Endangered Species Act (ESA), 16 U.S.C. §§ 1531 et seq., Congress directed the Secretaries of Interior and Commerce to list as endangered those species which are "in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. §§ 1532(6), 1533. The

ESA affords listed species certain protections.  For example, Section 9 of the ESA prohibits any unauthorized "take" of an endangered species.  16 U.S.C. § 1538(a).

Section 7 of the ESA requires each federal agency to "insure" that any action that it authorizes, funds, or carries out "is not likely to jeopardize the continued existence of any endangered or threatened species or result in the destruction or adverse modification" of designated critical habitat.  16 U.S.C. § 1536(a)(2).  To achieve this objective, an agency proposing an action, such as APHIS in this case, must consult with the United States Fish and Wildlife Service (FWS).  See 16 U.S.C. § 1536; 50 C.F.R. §§ 402.03, 402.13, 402.14.

The FWS regulations allow for informal and formal consultation.  Informal consultation is an optional process that includes all discussions, correspondence, etc., between the FWS and the action agency, and that is designed to assist the action agency in determining whether formal consultation or a conference is required.  See 50 C.F.R. § 402.13(a).  The action agency first prepares a biological assessment or evaluation to assess the effects of its action on listed species in all areas to be affected directly or indirectly by the action.  Defenders of Wildlife v. Norton, 257 F. Supp. 2d 53, 59 (D.D.C. 2003).

If during informal consultation the action agency determines that its proposed action is not likely to adversely affect listed species or critical habitat, and the FWS concurs in writing, the consultation process is terminated, and no further action is necessary.  See 50 C.F.R. § 402.13(a); see also id. § 402.14(b).  If the action agency determines that the proposed action is likely to adversely affect a listed species, formal consultation with the FWS is required.  50 C.F.R. § 402.14(a); accord Defenders of Wildlife, 257 F. Supp. 2d at 59.  Formal consultation procedures require the U.S. Fish & Wildlife Service or NMFS to prepare a biological opinion

including a conclusion as to whether the proposed action is likely to jeopardize the continued existence of a listed species or result in destruction or adverse modification of critical habitat. Water Keeper Alliance v. United States Dep't of Defense, 271 F.3d 21, 26 (1st Cir. 2001); 50 C.F.R. § 402.14(g).

The ESA requires both the action agency and the FWS to use the "best scientific and commercial data available" in the consultation process. 16 U.S.C. § 1536(a)(2). "[T]he Court's review of the scientific data included in the administrative record is limited to an inquiry as to whether the record supports the agency's findings and whether the agency's actions were based on the best scientific data available to it." American Wildlands v. Norton, 193 F. Supp. 2d 244, 252 (D.D.C. 2002) (internal quotes omitted). The court must only determine whether the agency has met certain minimal standards of rationality. Id. (citing Ethyl Corp. v. EPA, 541 F.2d 1, 36 (D.C. Cir. 1976)).

### 2. The Section 9 "Take" Prohibition

The ESA prohibits any person from taking a listed species. 16 U.S.C. § 1538(a)(1)(B). To "take" is defined as "to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect or attempt to engage in any such conduct." 16 U.S.C. § 1532(19). There are certain exceptions to this prohibition including an exemption for takings that are in compliance with the terms and conditions of an incidental take statement issued in conjunction with a biological opinion and an exception for certain permitted activities. 16 U.S.C. §§ 1536(o)(2) and 1539(a).

### 3. Jurisdictional Requirement for 60 Days Notice

The ESA provides for its enforcement by "citizen" civil suits. 16 U.S.C. § 1540(g)(1). "Citizen suits" fall into three categories: (1) those to enjoin any person alleged to be in violation

11

of the ESA, (2) those to compel the Secretary of the Interior (or Commerce) to apply the statutory prohibitions with respect to the taking of any endangered or threatened species within any State, and (3) those alleging that the Secretary failed to perform a mandatory act or duty under § 4, which governs the listing of species as threatened or endangered and the designation of critical habitat.  Id.  "Citizen suits" to enforce the ESA are required to be preceded by at least 60 days' written notice of the violation to the Secretary and to the "alleged violator."  16 U.S.C. § 1540(g)(2)(A)(i).

## III.  STANDARD OF REVIEW

Defendants move to dismiss plaintiff's First Amended Complaint for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  A Rule 12(b)(1) motion may attack subject matter jurisdiction either facially or factually.  White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000); McMaster v. United States, 177 F.3d 936, 940 (11th Cir. 1999) (addressing attack on subject matter jurisdiction in claim brought under the federal QTA).  When, as here, a Rule 12(b)(1) attack is factual,[4] the Court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment, and the Court need not presume the truthfulness of plaintiff's allegations.  White, 227 F.3d at 1242.

A motion to dismiss in accordance with Federal Rule of Civil Procedure 12(b)(6) may be granted if it appears beyond a doubt that the plaintiff can prove no set of facts to support the relief requested.  Chem Service, Inc. v. Environmental Monitoring Systems Laboratory-

---

[4]Defendants have gone beyond the pleadings to attach plaintiff's 60-day Notice of Intent to Sue as Exhibit A, in support of their Federal Rule of Civil Procedure 12(b)(1) argument.

Cincinnati of the United States EPA, 12 F.3d 1256, 1261 (3rd Cir. 1993).  In deciding such a motion, the Court must accept all allegations in the Amended Complaint, and all reasonable inferences that can be drawn from them, as true, and the Court must read all allegations in the Amended Complaint in the light most favorable to plaintiff.  Id.

## IV.  ARGUMENT

Counts II and IV of plaintiff's Amended Complaint should be dismissed.  First, plaintiff failed to provide adequate notice of its intent to sue, a jurisdictional prerequisite to bringing an ESA citizen suit.  Second, if plaintiff could demonstrate it provided proper notice, the Court would still lack jurisdiction over each of the claims.  Count II improperly alleges that the Secretary, through the Fish and Wildlife Service, in her capacity as administrator of the ESA is subject to a citizen suit for violation of the ESA take prohibition.  Plaintiff's claim lies outside the boundaries of the narrow waiver of sovereign immunity for citizen suits under the ESA, and thus jurisdiction is lacking.  In Count IV, plaintiff seeks to enforce compliance not with any requirement of the ESA, but with the ESA's Congressional policy statement.  The citizen suit does not waive immunity to such an attempt to enforce broad policy direction, and plaintiff has failed to state a claim.  Finally, Count IV alleges a violation of a federal-state agency Memorandum of Understanding which explicitly states that it does not grant enforcement rights against the government to third parties, and therefore, plaintiff has failed to state a claim.

### A.     PLAINTIFF HAS FAILED TO GIVE THE REQUISITE 60 DAY NOTICE OF ITS CLAIMS UNDER COUNTS III AND IV OF ITS AMENDED COMPLAINT.

The ESA allows a citizen, such as plaintiff here, to commence a civil suit on its own behalf to enjoin any person "who is alleged to be in violation of any provision of" the ESA or its

implementing regulations. 16 U.S.C. § 1540(g)(1)(A).  But the ESA provides that no suit may be brought "prior to sixty days after written notice of the violation has been given to the Secretary, and to the alleged violator of any such provision or regulation[.]" 16 U.S.C.  §1540(g)(2)(A)(i).

A notice letter under the ESA must alert the recipients to the actual violation alleged in a subsequently filed complaint, and insufficiency of such notice is an absolute bar to jurisdiction. Southwest Center for Biological Diversity v. United States Bureau of Reclamation, 143 F.3d 515, 520-22 (9th Cir. 1998).  See also Hallstrom v. Tillamook County, 493 U.S. 20 (1989) (similar notice requirement under Resources Conservation and Recovery Act of 1976 is condition precedent for suit); Save the Yaak Comm. v. Block, 840 F.2d 714, 721 (9th Cir. 1988) (holding that 60-day notice requirement was not met and the ESA claim must be dismissed for lack of jurisdiction).  Accord, Building Industry Ass'n of Southern California v. Lujan, 785 F.Supp. 1020, 1021 (D.D.C. 1992).

The sixty-day notice requirement provides for a litigation-free window within which the government agency may, if warranted, cure any alleged violation.  See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., 484 U.S. 49, 60 (1987); Southwest Center for Biological Diversity, 143 F.3d at 520 ("The purpose of the 60-day notice provision is to put the agencies on notice of a perceived violation of the statute and an intent to sue.  When given notice, the agencies have an opportunity to review their actions and take corrective measures if warranted.")

The notice requirement must be construed strictly, not flexibly or pragmatically. Hallstrom, 493 U.S. at 26-28.  Moreover, the notice must be specific enough to further the purposes of allowing an opportunity for the Secretary to cure the alleged failure and thus avoid litigation.  Southwest Center for Biological Diversity, 143 F.3d at 520; accord, Common Sense

14

<u>Salmon Recovery v. Evans</u>, 329 F.Supp.2d 96, 104 (D.D.C. 2004) (holding that plaintiff failed to provide requisite notice to bring certain claim when the 60 day notice of intent to sue letter failed to mention the claim).  <u>See also</u> <u>Water Keeper Alliance</u>, 271 F.3d at 29-30 (noting that it agrees with district court that the 60 day notice must "adequately inform the agency of the exact grievances against it.").

### 1.  Plaintiff's 60 Day Notice of Intent to Sue Failed to Provide the Requisite Notice.

While plaintiff sent a 60 day notice of intent to sue to defendants, the letter failed to give notice with respect to Counts II and IV of the Amended Complaint.  In Count II, plaintiff contends that the FWS has effected a "taking," and violated Section 9 of the ESA because scientific studies prepared for the FAA with regard to a proposed runway expansion at an airport on Maui purportedly show that "California, Hawai'i, south Florida, and the tropical Territories and Commonwealths associated with the United States will be invaded by alien species from Taiwan through the introduction of suitable breeding habitats."  Amd. Compl. at ¶ 63. According to plaintiff, the FWS failed to consider imposing "alien species interdiction features" when it concurred with APHIS's Biological Evaluation, even though FWS allegedly did require these features in a Biological Opinion issued almost ten years ago with respect to the expansion of runways at Kahului Airport in Maui.  Amd. Compl. At ¶ 64.  According to plaintiff, FWS has effected a "taking" here by failing to require the same features for the import of <u>Phalaenopsis</u> from Taiwan.

Finally, plaintiff contends that FWS has effected a "taking" and has violated 50 C.F.R. §

402.14(g), which governs "formal consultation,"[5] by allegedly failing to consider its own

recommendations submitted to the Hawaii Ant Group regarding Hawaii's "unique ecology."

Amd. Compl. at ¶ 66.  The Amended Complaint contains a number of averments regarding the

Hawaii Ant Group and its written policy regarding introduction of ants into Hawaii, see e.g.,

Amd. Compl. At ¶¶ 49-56, and yet none of those averments, or the argument that FWS has

effected a "taking" and violated 50 C.F.R. § 402.14(g) by failing to consider what it told the

Hawaii Ant Group, appear in plaintiff's 60 day notice of intent to sue.

Nothing in plaintiff's 60 day notice of intent to sue raises these arguments to defendants'

attention.  While the letter notes that the Departments of Agriculture and Interior had purportedly

violated Section 9 "through past, present, and planned future actions which have resulted in, and

imminently threaten to continue, unlawful "take" of endangered species and threatened species

within the meaning of the [statute and regulations]," Letter at 2, the 60 day notice of intent to sue

fails to explain the basis for this argument.

Moreover, the notice of intent to sue fails to make any mention of the arguments in Count

IV of the amended complaint.  In Count IV of its Amended Complaint, plaintiff contends that

defendants have breached "their obligations" under a Memorandum of Understanding and a

Federal-State Alien Species Action Plan for the Kahului Airport that is incorporated into the

MOU.  Amd. Compl. at ¶ 72.  The MOU, which is Attachment 3 to the Amended Complaint, is

an agreement among the United States Departments of Transportation, Interior, and Agriculture,

and the Hawaii Departments of Transportation, Agriculture, Land and Natural Resources, and

---

[5]The agencies did not engage in formal consultation here.  Final Rule, 69 Fed. Reg. 24,916, 24, 934 (May 5, 2004)

the Department of Health.  MOU at 1.  The MOU resulted from ESA consultations conducted for the improvements of facilities at the Kahului Airport in Maui, and the stated goal of the MOU is to prevent the introduction of alien species into Maui via the airport.  MOU at 2.  As part of that effort, the parties to the MOU also adopted a "Federal-State Alien Species Action Plan," attached to the MOU as Appendix A, which sets forth certain steps the agencies intend to take to prevent the introduction of pests from passengers, cargo, and aircraft itself.  Plan at ¶ 2.

According to plaintiff, defendants breached their obligations by failing to consult with the "Hawaii parties to the [MOU]" and failing to "conduct a specific risk assessment for the potential of alien species introductions along with importations of potted "Phalaenopsis" spp. orchid plants from Taiwan. . . ."  Id. at ¶ 73.  As with the claim asserted in Count II, nothing in plaintiff's 60 day letter raises this as an argument.  The strict construction requirements of the 60-day notice provisions require that a plaintiff give notice of the actual violations that form the basis of his present complaint. Thus, plaintiff has failed to provide the requisite notice of intent to sue under Counts II and IV of the amended complaint, and those counts should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.  Common Sense Salmon Recovery v. Evans, 329 F.Supp.2d at 104; Southwest Center for Biological Diversity, 143 F.3d at 520-22 (holding that plaintiffs had failed to provide requisite notice when notice letter notified intent to sue under Section 7 of the ESA, but failed to articulate the specific violations that appeared in plaintiffs' complaint, and therefore, failed to give defendants the requisite notice and opportunity to correct the violations).

**B.     The Court Lacks Jurisdiction to Hear Plaintiff's Claim that FWS' Concurrence in APHIS' Not Likely to Adversely Effect Finding Is an ESA Section 9 "Take"**

17

As set forth above, section 11(g)(1)(A) of the ESA provides that

> [A]ny person may commence a civil suit on his own behalf to
> enjoin any person, including the United States and any other
> governmental instrumentality or agency . . . , who is alleged to be
> in violation of any provision of this chapter or regulation issued
> under the authority thereof.

16 U.S.C. § 1540(g)(1)(A) (emphasis added).  Here, plaintiff alleges that the Secretary of the

Interior, acting through the Fish and Wildlife Service, is in violation of the ESA section 9 take

provision through its concurrence in APHIS' determination that the importation of Phalaenopsis

species orchids from Taiwan in approved growing media will not adversely affect federally listed

or proposed endangered or threatened species or their habitats.  Count II of Amended Complaint.

This claim is not properly cognizable under the citizen suit because it does not allege a violation

of the ESA as the term "violation" has been interpreted by the Supreme Court in Bennet v.

Spear, 520 U.S. at 173-74.

In Bennett v. Spear, the Supreme Court explicitly held that when the Secretary, through

FWS, acts as the consulting agency under ESA section 7, the Secretary is functioning in her

capacity as administrator of the statute and it cannot be considered "in violation" of the statute.

Bennett, 520 U.S. at 173-43.  As explained earlier, ESA section 7(a)(3) requires federal agencies

"in consultation with and with the assistance of the Secretary" to

> insure that any action authorized, funded, or carried out by such agency . . . is not
> likely to jeopardize the continued existence of any endangered species or
> threatened species or result in the destruction or adverse modification of habitat of
> such species which is determined by the Secretary . . . to be critical . . . .

16 U.S.C. § 1536(a)(2).  Like the claims in Bennett, plaintiff here tries to challenge the

Secretary's implementation of the ESA through FWS' role as the consulting agency under ESA

section 7.  These actions cannot be reviewed under the ESA citizen suit, and the Court lacks

jurisdiction to hear these claims.

In Bennett, the Court carefully reviewed the structure and purpose of the citizen suit and found that allowing suits against the Secretary in her capacity as administrator "is simply incompatible with the existence of § 1540(g)(1)(C), which expressly authorizes suit against the Secretary, but only to compel [her] to preform a nondiscretionary duty under § 1533. That provision would be superfluous – and worse still, its careful limitation to § 1533 would be nullified - if § 1540(g)(1)(A) permitted suit against the Secretary for *any* "violation" of the ESA." Bennett, 520 U.S. at 173. As the Court recognized, Congress created only limited circumstances under which the Secretary, as administrator of the ESA, is subject to citizen suits. Id. That limited class of actions consists only of those identified in Section 1540(g)(1), and does not include a suit against the Secretary as the administrator of the ESA for effecting a taking under Section 9. Id. Under the holding and principles of Bennett, plaintiff cannot pursue its claim for ESA section 9 take against FWS. The alleged grounds of the take– the concurrence in APHIS' not likely to adversely affect finding – are a clear example of the FWS acting in its capacity as administrator of the ESA.

To the extent that plaintiff wishes to challenge the actions of the Secretary acting in her capacity as the administrator of the ESA, and not as an action agency, plaintiff's recourse is through an APA suit alleging that FWS' concurrence in APHIS' findings is arbitrary and capricious or otherwise in violation of law. Plaintiff has included such a claim in its Amended Complaint, in Count III, which challenges the substance of the FWS' not likely to adversely affect finding. This challenge will provide the proper relief should the Court find that FWS' actions are arbitrary or capricious – the action can be set aside and remanded to the agency.

**C.     ALTERNATIVELY, THE COURT EITHER LACKS JURISDICTION TO HEAR PLAINTIFF'S CLAIM IN COUNT IV, PLAINTIFF HAS FAILED TO STATE A CLAIM FOR WHICH RELIEF MAY BE GRANTED, AND PLAINTIFF LACKS STANDING TO ASSERT COUNT IV.**

In Count IV, plaintiff claims that both APHIS and FWS have violated the APA and ESA by failing to comply with the terms of a non-enforceable Memorandum of Understanding between certain federal and State of Hawaii agencies.  The Court lacks jurisdiction to hear these claims against APHIS entirely and lacks jurisdiction to hear these claims against FWS to the extent they are premised on the ESA citizen suit.  It is beyond question that the United States cannot be sued without the consent of Congress.  United States v. Sherwood, 312 U.S. 584, 586 (1941).  The sovereign immunity of the United States is not waived by implication; rather, any such waiver must be "unequivocally expressed."  United States v. Nordic Village, 503 U.S. 30, 33-34 (1992) (citation omitted).  Plaintiff does not specifically state in this cause of action whether it bases this particular claim on the waiver in the APA or the ESA citizen suit.  See Amd. Compl. At ¶ 73.

To the extent plaintiff seeks an order requiring APHIS and FWS to comply with the MOU, the citizen suit is not a basis for the suit.  Plaintiff alleges that the alleged failure to meet the terms of the MOU violates Section 2(c)(1) of the ESA, 16 U.S.C. § 1531(c)(1).  Amd. Compl. At ¶ 73.  With respect to the claim against FWS, as explained in our arguments regarding Count II, FWS is not subject to citizen suits when acting in its role as administrator of the ESA. Here, FWS' concurrence in APHIS' findings pursuant to ESA Section 7(a)(2) fall into that category of administration of the statute.  Thus, plaintiff cannot pursue a citizen suit against FWS alleging that its 7(a)(2) concurrence somehow is "in violation" of ESA section 2(c)(1).

Moreover, plaintiff's claim that defendants have violated Section 2(c)(1) of the ESA, 16

20

U.S.C. § 1531(c)(1), Amd. Compl. At ¶ 73, is not cognizable under the ESA's citizen suit

provision, because an allegation of a violation of section 2(c)(1) cannot form the basis for a

citizen suit.  Section 2 of the ESA is merely the statement of "Congressional findings and

declaration of purposed and policy."  16 U.S.C. § 1531.  In particular section 2(c)(1) states:

> It is further declared to be the policy of Congress that all Federal departments and
> agencies shall seek to conserve endangered species and threatened species and
> shall utilize their authorities in furtherance of the purposes of this chapter.

16 U.S.C. § 1531(c)(1).  This provision of the ESA serves to state Congress' purpose in passing

the Act, and enunciates Congress' goal that agencies are to endeavor to conserve endangered and

threatened species.

Section 2(c)(1) does not impose any requirements, duties, obligations, or deadlines of

which an agency could be "in violation," and which would form the basis of a citizen suit claim.

The citizen suit of the ESA is an avenue for obtaining judicial review of  compliance with

substantive and procedural requirements of the ESA, and regulations promulgated thereunder.

16 U.S.C. § 1540(g).  Several sections of the ESA, particularly section 7, 16 U.S.C. § 1536, set

forth the requirements that agencies must meet to ensure that Congress' general policy goals are

met – requirements that if not met could result in an agency being "in violation" of the Act.

Count IV, however, does not allege that defendants have violated any requirement or regulation

of the ESA, such as section 7, 16 U.S.C. § 1536.  The Court should decline to expand the citizen

suit to include a violation of the Congressional policy statement, and should dismiss Count IV

for lack of jurisdiction and/or for failure to state a claim.

Moreover, plaintiff cannot assert, as it does in paragraph 73 of its Amended Complaint,

that defendants have violated the MOU because the MOU did not create any enforceable rights

or benefits against the United States or its agencies or officers.  MOU at ¶ VII (Att. 3 to Amd.

Complaint).  Instead, it is "intended to improve the internal management of the executive

branch."  Id.  Thus, plaintiff has failed to state a claim in Count IV, because the MOU did not

create a legally enforceable right against the parties to it, and therefore, plaintiff cannot seek

judicial review for a purported violation.  This Court should also dismiss Count IV under Federal

Rule of Civil Procedure 12(b)(6) for failure to state a claim.[6]

## CONCLUSION

For the reasons expressed above, defendants' motion to dismiss should be granted.

Dated: October 7, 2005                              Respectfully submitted,

                                                    KELLY A. JOHNSON
                                                    Acting Assistant Attorney General
                                                    Environment & Natural Resources Division
                                                    United States Department of Justice


                                                    _____/s/_____
                                                    DONNA S. FITZGERALD
                                                    Connecticut Bar #411810
                                                    Trial Attorney

---

[6] Furthermore, plaintiff has not demonstrated standing to challenge the MOU.  To establish standing, plaintiff bears the burden of demonstrating, at an "irreducible minimum," that:  (1) it has suffered a "concrete and particularized" injury which is "actual and imminent" rather than "conjectural or hypothetical;" (2) the injury was caused by or is "fairly traceable to" the action of the defendants; and (3) a favorable decision by the court is likely to redress the injury.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Fund for Animals, Inc. v. Norton, 322 F.3d 728, 733 (D.C. Cir. 2003) (applying three part standing test to motion to intervene as defendant-intervenor in ESA case).

Plaintiff contends that the Phalaenopsis plants are or will be imported at Kahului Airport, the subject of the MOU.  Amd. Compl. At ¶ 72.  On the contrary, the plants imported under the Final Rule must be imported into Federal plant inspection stations, Final Rule, 68 Fed. Reg. 24, 916, 24,918 (May, 5, 2004) ("All plants imported under this rule are required to be imported into Federal plant inspection stations), and the only Hawaiian port of entry with such a facility is in Honolulu.  7 C.F.R. § 319.37-14 (Ports of Entry, with ports with plant inspection stations noted with an asterisk); . . . .")

General Litigation Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington D.C. 20044-0663
Phone:  (202) 305-0476
Fax: (202) 305-0506
E-mail: Donna.Fitzgerald@usdoj.gov

OF COUNSEL:

Darlene Bolinger
Attorney Advisor General
Regulatory Division
Office of the General Counsel
United States Department of Agriculture
Rm 2319 South Building
1400 Independence Ave., SW
Washington, DC 20250-1400


Peg Romanik, Attorney
Office of the Solicitor
Division of Parks & Wildlife
United States Department of the Interior
1849 C. St., N.W., MS 6557
Washington D.C. 20240

ATTORNEYS FOR DEFENDANTS