# United States District Court
# For the District of Columbia

| | |
|---|---|
| ——————————————— ) | |
| HAWAI`I ORCHID ) | |
| GROWERS ASSOCIATION, ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | |
|     v. ) | Civil Action No. 05-1182 (RCL) |
| ) | |
| UNITED STATES DEPARTMENT ) | |
| OF AGRICULTURE, *et al.*, ) | |
| ) | |
|     and ) | |
| ) | |
| UNITED STATES DEPARTMENT ) | |
| OF INTERIOR, *et al.*, ) | |
| ) | |
|     Defendants. ) | |
| ——————————————— | |

PLAINTIFFS' COMBINED OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND
REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... iii-vi

PLAINTIFFS HAVE ARTICLE III STANDING ......................................................................... 1-7

STANDARD OF REVIEW ......................................................................................................... 7-9

THE "BEST SCIENTIFIC AND COMMERCIAL DATA AVAILABLE" STANDARD ...................... 9-10

DEFENDANT ANIMAL AND PLANT HEALTH INSPECTION SERVICE WITHHELD KEY DOCUMENTS
FROM DEFENDANT FISH AND WILDLIFE SERVICE, AND, IN DOING SO, VIOLATED THE ENDANGERED
SPECIES ACT ....................................................................................................................... 10-12

COMMENTS FROM THE HAWAI`I ORCHID GROWERS ASSOCIATION AND FROM THE HAWAI`I
DEPARTMENT OF AGRICULTURE PROVIDE THE BEST AVAILABLE SCIENTIFIC AND COMMERCIAL
DATA REGARDING THRIPIDAE PESTS OF PHALAENOPSIS SPP. ORCHIDS, DATA NOT PROVIDED
DURING THE CONSULTATION PROCESS BY DEFENDANT ANIMAL AND PLANT HEALTH INSPECTION
SERVICE TO DEFENDANT FISH AND WILDLIFE SERVICE ...................................................... 13-18

THE ISSUE OF THRIPS INFESTATION WAS NOT ADEQUATELY ADDRESSED BY DEFENDANT
ANIMAL AND PLANT HEALTH INSPECTION SERVICE OR BY
DEFENDANT FISH AND WILDLIFE SERVICE ....................................................................... 19-23

THE ISSUE OF APPROPRIATE SCREEN MESH SIZE FOR THE PROGRAM GREENHOUSES
WAS SWEPT UNDER THE RUG ............................................................................................. 23-26

THE RE-INITIATION OF ENDANGERED SPECIES ACT CONSULTATIONS AGAIN RAISED
QUESTIONS ABOUT THE ADEQUACY OF THE SCREEN MESH SIZE FOR THE PROGRAM
GREENHOUSES, AND, AGAIN, DEFENDANT ANIMAL AND PLANT HEALTH INSPECTION
SERVICE OBFUSCATED THE ISSUE ...................................................................................... 27-30

DEFENDANT ANIMAL AND PLANT HEALTH INSPECTION SERVICE NEVER EVALUATED THE
ACTION'S EFFECT ON CRITICAL HABITAT OF FEDERALLY-LISTED SPECIES...................................30-32

CERTIFICATE OF SERVICE.............................................................................................................34

## TABLE OF AUTHORITIES

### *STATUTES*

5 U.S.C. § 702 ..........................................................................................................................8

5 U.S.C. § 706 ........................................................................................................................31

5 U.S.C. § 706(2)(A) ................................................................................................................8

16 U.S.C. § 1533(a) ..................................................................................................................7

16 U.S.C. § 1536 .......................................................................................................................7

16 U.S.C. § 1536(a)(2) ....................................................................................7, 9, 10, 30, 32

16 U.S.C. § 1538(a) ..................................................................................................................7

16 U.S.C. § 1540(g) ..................................................................................................................7

### *REGULATIONS*

7 C.F.R. § 319.37-8(e) ......................................................................................................25, 26

7 C.F.R. § 319.37-8(e)(2)(ii) ..................................................................................................25

50 C.F.R. § 402.03 ....................................................................................................................7

50 C.F.R. § 402.12(a) ..............................................................................................................30

50 C.F.R. § 402.13 ...........................................................................7

50 C.F.R. § 402.14 ...........................................................................7

50 C.F.R. § 402.14(d) ........................................................................7

*CASES*

*Action Alliance of Senior Citizens v. Heckler,*
789 F.2d 931 (D.C. Cir. 1986) ............................................................4-5

*ALLTEL Corp. v. Federal Communications Commission,*
838 F.2d 551 (D.C. Cir. 1988) ..............................................................8

*American Rivers v. U.S. Army Corps of Engineers,*
271 F. Supp. 2d 230 (D.D.C. 2003) .....................................................9, 29

\* *American Society for the Prevention of Cruelty to Animals v. Ringling Brothers,*
317 F.3d 334 (D.C. Cir. 2003) ...............................................................5

*American Wildlands v. Norton,*
193 F. Supp. 2d 244 (D.D.C. 2002) .......................................................10

*Animal Legal Defense Fund, Inc. v. Glickman,*
154 F.3d 426 (D.C. Cir. 1998) ...............................................................5

*Bennett v. Spear,*
520 U.S. 154 (1997) ...........................................................................2

*Carleton v. Babbitt,*
26 F. Supp. 2d 102 (D.D.C. 1998) ...........................................................8

*Center for Biological Diversity v. Lohn,*
296 F. Supp. 2d 1223 (W.D. Wash. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Chevron U.S.A. v. Federal Energy Regulatory Commission,*
193 F. Supp. 2d 54 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*City of Kansas City Missouri v. HUD,*
923 F.2d 188 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8-9

*Connor v. Burford,*
848 F.2d 1441 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9-10

* *Defenders of Wildlife v. Norton,*
257 F. Supp. 2d 53 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3, 6

*Defenders of Wildlife v. U.S. EPA,*
420 F.3d 946 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Friends of the Earth v. Laidlaw Environmental Services,*
528 U.S. 167 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

*Fund for Animals v. Norton,*
322 F.3d 728 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

*Greenpeace Action v. Franklin,*
14 F.3d 1324 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Greenpeace v. National Marine Fisheries Service,*
80 F. Supp. 2d 1137 (D. Wash. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 32

*Hunt v. Washington State Apple Advertising Commission,*
432 U.S. 333 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

*Marsh v. Oregon Natural Resources Council,*
490 U.S. 360 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.,*
463 U.S. 29 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 31

*National Wildlife Federation v. Norton,*
323 F. Supp. 2d 170 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

* *Natural Resources Defense Council v. Evans,*
364 F. Supp. 2d 1083 (N.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 19

* *Resources Limited, Inc. v. Robertson,*
35 F.3d 1300 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Sierra Club v. Environmental Protection Agency,*
292 F.3d 895 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

*Tennessee Valley Authority v. Hill,*
437 U.S. 153 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*The Williams Companies v. Federal Energy Regulatory Commission,*
345 F.3d 910 (D.C. Cir . 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Warth v. Seldin,*
422 U.S. 490 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

**PLAINTIFFS' COMBINED OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**Plaintiffs Have Article III Standing.**

An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Friends of the Earth v. Laidlaw Environmental Services*, 528 U.S. 167, 181 (2000), citing *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 342-343 (1977); *Sierra Club v. Environmental Protection Agency*, 292 F.3d 895, 898 (D.C. Cir. 2000). The Hawai`i Orchid Growers Association is just such an entity. It is comprised of "breeders, propagators, and growers of orchids in Hawaii." Administrative Record, at 1598. "Its goals are to promote the development of [the orchid] industry by supporting marketing, research and education projects." Administrative Record, at 1598. The Hawai`i Orchid Growers Association is comprised of 144 members. Administrative Record, at 768. A listing of 130 members of the Association, many of whom are commercial enterprises, is set out in the Administrative Record. Administrative Record, at 1600-09. One or more of its members grow *Phalaenopsis* orchids, Administrative Record, at 1601, 1603, and one or more such members specialize in potted *Phalaenopsis* spp. orchids, Administrative Record at 1606, 1608. At issue here is the Final Rule published Wednesday, May 5th, 2004 which adds orchids of the genus *Phalaenopsis* from

- 1 -

Taiwan to the list of plants that may be imported in an approved growing medium. Administrative Record, at 1524-44.

Article III standing, U.S. CONST., art. III, § 2, requires: (1) injury in fact—certainly impending invasion of a legally protected interest that is itself concrete and particular; (2) injury that is fairly traceable to the challenged act; and (3) injury that is likely to be redressed by a favorable decision, although this redress need be no more than a proper identification of the risks to particular interests. *Bennett v. Spear*, 520 U.S. 154, 167 (1997), citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 572-74 (1992); *Fund for Animals v. Norton*, 322 F.3d 728, 732 (D.C. Cir. 2003).

There are three species of native Hawai`ian orchids, one of which, *Platanthera holochila*, is listed as an Endangered Species, and the others, *Anoectochilus sandvicensis* and *Liparis hawaiiensis*, are both species of concern. All three species of native Hawai`ian orchids are found only in Hawai`i. Designated critical habitat for *Platanthera holochila* is bog hummocks that support a variety of mosses and bryophytes; *Anoectochilus sandvicensis* and *Liparis hawaiiensis* are associated with mosses that grow on the trunks of trees in wet forests. Administrative Record, at 040-041. *Anoectochilus sandvicensis* is an "associated native species" in critical habitat of the Endangered Species *Adenophorus periens* (pendant kihi fern), 68 Fed. Reg. 12987-12988 (2003), and *Liparis hawaiiensis* (awapuhi-akanaloa) is an associated native species in critical habitat of the Endangered Species *Phyllostegia hirsuta*, 68 Fed. Reg. 35964-35965 (2003).

Defendant Fish and Wildlife Service, United States Department of Interior, has made it clear that the Final Rule may be detrimental to these native Hawai`ian orchids by altering critical condi-

tions required for their successful germination, growth, and reproduction, and has made it clear that possible infestations in Hawai`i of *Thripidae* pests of *Phalaenopsis* spp. orchids from Taiwan (also in a tropical climate) are an "area" of "residual concern." Administrative Record, at 0267-68. Indeed, this risk to the native Hawai`ian orchids provides the requisite standing. Declaration of Arnold Hara, May 1st, 2006, at ¶ 6.

Each day, Plaintiffs have the opportunity to observe the native Hawai`ian orchids. Indeed, because of their avocational interest in *Orchidaceae*, Plaintiffs are more likely than other people to make such observations. *Defenders of Wildlife v. Norton*, 257 F. Supp. 2d 53, 62-63 (D.D.C. 2003). Having such commercial, educational, and aesthetic interests, members of the Hawai`i Orchid Growers Association have a particularized interest to prevent harm to, and, potentially, the extinction of, the native Hawai`ian orchids. Members of the Hawai`i Orchid Growers Association thus have a personal stake in the outcome of this controversy that warrants this Court's intervention. *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975).

It is a certainty that the threat of introduction of alien pests into Hawai`i and the rest of the United States is significantly heightened by the Final Rule. See Declaration of Arnold Hara, May 1st, 2006, at ¶¶ 1-7. Among the alien pests that likely will be introduced are invasive *Thripidae* pests of *Phalaenopsis* spp. orchids brought to Hawai`i from Taiwan and the blood-sucking midge *Forcipoymia taiwana*, known in Taiwan as "little King Kong," and a serious environmental problem there, which may well invade Hawai`i through eggs laid in the sphagnum moss in which maturing *Phalaenopsis* spp. orchids are cultivated in Taiwan, sphagnum moss that will be allowed entry into Hawai`i

- 3 -

with mature potted *Phalaenopsis* spp. orchid plants. Administrative Record, at 786-87, 1041-45, 1057-59.

Dr. Arnold Hara, a University of Hawai`i Professor and Entomologist, explains with particularity the events which will happen now that the Final Rule is in place. First, the importation of finished, flowering *Phalaenopsis* spp. orchid plants *and* the sphagnum moss in which maturing *Phalaenopsis* spp. orchids are cultivated in Taiwan, sphagnum moss that will be allowed entry into Hawai`i with mature potted *Phalaenopsis* spp. orchid plants, provides an inviting vehicle for "hitchhiking" alien pests. Declaration of Arnold Hara, May 1st, 2006, at ¶ 5. After the inevitable arrival of these "hitchhiking" alien pests, they will spread in the outdoors environment of Hawai`i, a tropical environment like that of Taiwan. Declaration of Arnold Hara, May 1st, 2006, at ¶ 2. Once these "hitchhiking" alien pests establish themselves in Hawai`i, they will not discriminate, and they will voraciously infest all species of *Orchidaceae*, including the plants grown for sale by members of the Hawai`i Orchid Growers Association, and, as well, the native Hawai`ian orchids. Declaration of Arnold Hara, May 1st, 2006, at ¶ 6.

These impacts to the Hawai`i Orchid Growers Association far exceed the "trifle" necessary to establish standing. *Chevron U.S.A. v. Federal Energy Regulatory Commission*, 193 F. Supp. 2d 54, 60 (D.D.C. 2002), *aff'd sub nom. The Williams Companies v. Federal Energy Regulatory Commission*, 345 F.3d 910 (D.C. Cir. 2003), quoting *Action Alliance of Senior Citizens v. Heckler*, 789 F.2d 931, 937 (D.C. Cir. 1986)("For purposes of Article III, the injury 'need not be large or intense; an

'identifiable trifle,' the Supreme Court has said, is sufficient to meet the constitutional mini-mum.'").

And the Hawai`i Orchid Growers Association has a particularized interest in the native Hawai`ian orchids. A member of the Hawai`i Orchid Growers Association explains efforts, so far unsuccessful, to propagate *Anoectochilus sandvicensis* or *Liparis hawaiiensis.* Declaration of Bob Zeller, April 21st, 2006. This is the sort of aesthetic interest that is sufficient for standing, *American Society for the Prevention of Cruelty to Animals v. Ringling Brothers*, 317 F.3d 334, 336-37 (D.C. Cir. 2003), and this aesthetic interest will be harmed by the introduction of alien pests if the Final Rule is not set-aside. Indeed, the Final Rule threatens *Platanthera holochila, Anoectochilus sandvicensis,* and *Liparis hawaiiensis*—no more is required to satisfy the causation prong of Constitutional standing. *Animal Legal Defense Fund, Inc. v. Glickman*, 154 F.3d 426, 440-41 (D.C. Cir. 1998).

The injury threatened by the Final Rule is not merely conjectural or hypothetical. Defendants have failed to properly assess the impact on the native Hawai`ian orchids that will result from the alien pests that will be introduced under the Final Rule. As more fully discussed below, the Administrative Record chronicles just how Defendants have failed to identify these pests and the impact of their introduction into the fragile environment of Hawai`i. Once Defendant Fish and Wildlife Service, United States Department of Interior, made it clear that the Final Rule may be detrimental to these native Hawai`ian orchids by altering critical conditions required for their successful germination, growth, and reproduction. But now Defendant Fish and Wildlife Service, United States Department of Interior, is deafeningly silent.

- 5 -

And the injury threatened by the Final Rule is exacerbated by the pre-emption of the former regime of State-mandated inspection and quarantine. Administrative Record, at 97, 1048-49. Since 1953 the Hawai`i Department of Agriculture has routinely intercepted pests on shipments of high pest-risk bare-rooted orchid seedlings (bare-rooted orchid seedlings from countries south of 30 degrees north latitude as is Taiwan, Administrative Record, at 0118), pests that are detected while these high pest-risk bare-rooted orchid seedlings were then being held in State-mandated quarantine for sixty days. Administrative Record, at 0086-87. These same shipments of high pest-risk bare-rooted orchid seedlings had been examined and passed by inspectors of the exporting country, and examined and passed by inspectors of the Animal and Plant Health Inspection Service, before moving into State-mandated quarantine.

Plaintiffs' challenges to the Final Rule will indeed be redressed by a favorable decision in this case. It is not just that Defendants have performed procedural steps in an incorrect or inaccurate manner—Defendants have overlooked the creation of demonstrable risk to Plaintiffs' particularized personal and environmental interests, and it is likely that a second, proper review of Taiwan's importation request will correct these errors and impose additional phytosanitary measures such that Plaintiffs are protected from invasive pests, and the native Hawai`ian orchids are secure. *Cf. Defenders of Wildlife*, 257 F. Supp. 2d, at 64.

The Endangered Species Act requires the Secretary of Interior to list as Endangered or Threatened those species whose habitat or range may be destroyed, modified, or curtailed; or where there is an "inadequacy of existing regulatory mechanisms;" or where "other natural or manmade factors" affect

- 6 -

the continued existence of such species. 16 U.S.C. § 1533(a). The Endangered Species Act affords listed species certain protections, including prohibitions against any unauthorized "take" of an Endangered or Threatened species. 16 U.S.C. § 1538(a). Section 7 of the Endangered Species Act requires each Federal agency to ensure that any action it authorizes, funds, or carries out "is not likely to jeopardize the continued existence of any endangered or threatened species or result in the destruction or adverse modification" of designated critical habitat. 16 U.S.C. § 1536(a)(2). To achieve this objective, Agency "Consultation" is required. *See* 16 U.S.C. § 1536; 50 C.F.R. §§ 402.03, 402.13, 402.14. In fulfilling the Consultation requirement under the Endangered Species Act, each Agency "shall use the best scientific and commercial data available" in the Consultation process. 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.14(d).

Here, the native Hawai`ian orchids will be seriously impacted by "hitchhiking" alien pests that will arrive with the importation of finished, flowering *Phalaenopsis* spp. orchid plants *and* the sphagnum moss in which maturing *Phalaenopsis* spp. orchids are cultivated in Taiwan, sphagnum moss that will be allowed entry into Hawai`i with mature potted *Phalaenopsis* spp. orchid plants. These "hitchhiking" alien pests, once established in the outdoor environment of Hawai`i, will devastate the native Hawai`ian orchids. Declaration of Arnold Hara, May 1st, 2006, at ¶ 6. And this devastation falls squarely within the zone of interests protected by the Endangered Species Act.

**Standard of Review.**

This case is brought under the citizen suit provisions of the Endangered Species Act, 16 U.S.C. § 1540(g). Because the Endangered Species Act does not specify its own standard of re-

view, judicial review is governed by Section 706 of the Administrative Procedure Act. 5 U.S.C. §§ 702, 706(2)(A); *Carlton v. Babbitt*, 26 F. Supp. 2d 102, 106 (D.D.C. 1998).

Under the Administrative Procedure Act, a reviewing court may overturn Agency action if it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); s*ee also Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 378 (1989). "Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Manufacturer's Association of the United States, Inc. v. State Farm Mutual Automobile Insurance Co.*, 46 U.S. 29, 43 (1983); s*ee also ALLTEL Corp. v. Federal Communications Commission*, 838 F.2d 551, 562 (D.C. Cir. 1988) (holding that the presumption of Agency expertise may be rebutted if Agency decisions are not reasoned).

Although a narrow review standard, judicial review under the Administrative Procedure Act does not shield an Agency from a "thorough, probing, in-depth review." *Center for Biological Diversity v. Lohn*, 296 F. Supp. 2d 1223, 1231 (W.D. Wash. 2003). An Agency seeking to justify its action may not offer a new explanation for the action, but must be judged on the rationale and record that led to the challenged decision. *City of Kansas City Missouri v. HUD*, 923 F.2d 188, 192 (D.C. Cir. 1991) ("arbitrary and capricious review . . . demands evidence of reasoned decision-making at agency level; agency rationales developed for the first time during litigation do not

- 8 -

serve as adequate substitutes"). In addition, when an Agency fails to articulate a rational connection between the facts found and the choice made, a reviewing court may not supply a reasoned basis for the Agency's action that the Agency itself has not given. *American Rivers v. U.S. Army Corps of Engineers*, 271 F. Supp. 2d 230, 251 (D.D.C. 2003).

**The "Best Scientific and Commercial Data Available" Standard.**

Section 7 of the Endangered Species Act prohibits Agencies from authorizing, funding or otherwise carrying out any action that is likely to "jeopardize" the continued existence of an Endangered or Threatened species, or result in the destruction or adverse modification of the designated critical habitat of such species. 16 U.S.C. § 1536(a)(2); *National Wildlife Federation v. Norton*, 323 F. Supp. 2d 170, 175 (D.D.C. 2004); *American Rivers*, *supra*, 271 F. Supp. 2d at 241. To discharge this duty, Agencies must consult with and obtain the assistance of, among others, the Secretary of Interior, acting through Defendant Fish and Wildlife Service. *American Rivers*, *supra*, 271 F. Supp. 2d at 241.

In fulfilling this Consultation requirement, the Endangered Species Act provides that "each agency shall use the best scientific and commercial data available." 16 U.S.C. § 1536(a)(2); *Natural Resources Defense Council v. Evans*, 364 F. Supp. 2d 1083, 1131 (N.D. Cal. 2003) (holding that the Agency must provide "*all* the best *available* relevant scientific data"). In addition, each Agency must support its conclusions with "ample" data and analysis, sufficient for a reasoned discussion of each issue. *Greenpeace Action v. Franklin*, 14 F.3d 1324, 1337 (9th Cir. 1993); *Connor v.*

*Burford*, 848 F.2d 1441 (9th Cir. 1988); *American Wildlands v. Norton*, 193 F. Supp. 2d 244, 256 (D.D.C. 2002).

In short, a reviewing court must consider whether an Agency "considered all the relevant [Endangered Species Act] factors and offered an explanation for its decision that is both 'plausible' and internally coherent." *Defenders of Wildlife v. U.S. EPA*, 420 F.3d 946, 959 (9th Cir. 2005). Importantly, Consultation cannot lawfully occur when an Agency has "selectively withheld" data from Defendant Fish and Wildlife Service during the required Consultation process. *Resources Limited, Inc. v. Robertson*, 35 F.3d 1300, 1304-05 (9th Cir. 1994).

**Defendant Animal and Plant Health Inspection Service Withheld Key Documents From Defendant Fish and Wildlife Service, And, in Doing So, Violated the Endangered Species Act.**

During the Endangered Species Act Section 7 Consultation process, Defendant Animal and Plant Health Inspection Service withheld highly relevant documents from Defendant Fish and Wildlife Service concerning thrips—a "quarantine" pest associated with *Phalaenopsis* spp. orchids.[1] As discussed below, upon withholding these relevant documents, the required Consultation process was incomplete and did not use or disclose the "best science and commercial data available," this in violation of the Endangered Species Act. 16 U.S.C. § 1536(a)(2).

---

[1] A "quarantine" pest is one where official quarantine action must be taken if the pest is intercepted by Defendant Animal and Plant Health Inspection Service at a port of entry. Administrative Record, at 210.

- 10 -

By way of background, Defendant Fish and Wildlife Service issued letters concurring with Defendant Animal and Plant Health Inspection Service's determinations that importing *Phalaenopsis* spp. orchids from Taiwan in approved growing media would "not adversely affect" Federally-listed species or their designated critical habitat. Administrative Record, at 299, 2852. This concurrence was based on documents, correspondence and discussions between the two Agencies during the required Consultation process. Based on facts admitted by Defendants, however, the documents that Defendant Animal and Plant Health Inspection Service provided to Defendant Fish and Wildlife Service consisted only of the 1997 and 2003 Pest Risk Assessments, the required Biological Evaluation, and correspondence directly exchanged between the two Agencies.[2]

But the Administrative Record fails to reflect that during the Endangered Species Act Section 7 Consultation process Defendant Animal and Plant Health Inspection Service provided Defendant Fish and Wildlife Service with the detailed Comment letters from both the Hawai`i Orchid Growers Association and from the Hawai`i Department of Agriculture.[3] In fact, Defendants *concede* that "it is not clear from the administrative record whether APHIS provided FWS the comments from plaintiff and the State of Hawaii Department of Agriculture during the Section 7 pro-

---

[2] See Defendants' Statement of Undisputed Material Facts, ¶¶ 8-10, 29-35, 37, 43-46, 48, 51, 53.

[3] See Plaintiffs' Statement of Material Facts, ¶ 9; and Defendants' Response to Plaintiffs' Statement of Material Facts ("Defendants' Response"), specifically, "Statement of Material Fact Number 29," at 56-57.

cess . . . ."[4] Defendants attempt to downplay the significance of Defendant Animal and Plant Health Inspection Service's withholding of key documents from Defendant Fish and Wildlife Service by asserting that even if Defendant Animal and Plant Health Inspection Service did not share important Comment letters with Defendant Fish and Wildlife Service, "plaintiff has failed to demonstrate the relevance in this case."[5]

The withheld Comment letters are highly relevant. They provide "the best scientific and commercial data available" concerning the threat of thrips infestation that will result by allowing importation from Taiwan finished, flowering *Phalaenopsis* spp. orchids in pots. Without such documentation, Defendant Fish and Wildlife Service could not have made a proper determination of whether this proposed Rule would "adversely affect" Federally-listed species and their critical habitat. Because Defendant Animal and Plant Health Inspection Service failed to provide Defendant Fish and Wildlife Service with *all* the best available scientific and commercial data, the required Consultation was incomplete and in violation of the Endangered Species Act.

---

[4] See Defendants' Memorandum in Support of Their Motions to Dismiss and/or for Summary Judgment, at 29.

[5] See Defendants' Response, specifically, "Statement of Material Fact Number 29," at 57.

**Comments From the Hawai`i Orchid Growers Association and From the Hawai`i Department of Agriculture Provide the Best Available Scientific and Commercial Data Regarding *Thripidae* pests of *Phalaenopsis* spp. Orchids, Data Not Provided During the Consultation Process by Defendant Animal and Plant Health Inspection Service to Defendant Fish and Wildlife Service.**

Comment letters from the Hawai`i Orchid Growers Association, Administrative Record, at 162-261, and the Hawai`i Department of Agriculture, Administrative Record, at 80-153, provided the best available scientific and commercial data concerning *Thripidae* pests of *Phalaenopsis* spp. orchids, and yet this data was not provided by Defendant Animal and Plant Health Inspection Service to Defendant Fish and Wildlife Service.

For example, the Hawai`i Growers Association's Comment letter chronicled the fact that the 1997 Pest Risk Assessment was based on an incomplete catalogue of quarantine pests. Administrative Record, at 164-165. The Comment letter was supported with a Report prepared by Dr. Arnold Hara. Administrative Record, at 220-227. In the 1997 Pest Risk Assessment, Tables 1 and 2 show pest lists for *Phalaenopsis* spp. orchids from Taiwan. Administrative Record, at 204-210. These Tables were prepared based on data provided by Taiwan, on literature reviews, and on interception records at ports of entry. Administrative Record, at 210. As pointed out in both the Comment letter and in Dr. Hara's Report, the pest lists identify quarantine pests associated with *Phalaenopsis* spp. orchids from Taiwan, including four thrips that infest the *Orchidaceae* plant family, of which the *Phalaenopsis orchid is a member*: (1) *Frankliniella intonsa*; (2) *Thripidae, sp.*; (3) *Thrips palmi*; and (4) *Tortricidae, sp.*[6] The 1997 Pest Risk Assessment also confirmed that

---

[6] See Administrative Record, at 164-165, 205, 207, and 221-223.

- 13 -

"[m]ultiple interception records exist" on *Thrips palmi*. Table 3 of the 1997 Pest Risk Assessment identified quarantine pests of *Phalaenopsis* spp. orchids from Taiwan, including the previously identified thrips. Administrative Record, at 211. And both Comment letters explain that "orchids belong to one of the largest, most diverse, [plant] families . . ., which are attacked by pests with wide host ranges," and that *Orchidaceae* is "the largest family of flowering plants and still one of the least known."[7]

Despite this available scientific and commercial data, the 1997 Pest Risk Assessment arbitrarily *limited* the quarantine pests likely to be included in commercial shipments of *Phalaenopsis* spp. orchids from Taiwan, and, in doing so, dismissed numerous quarantine pests, including thrips, from any further Risk Analysis. Administrative Record, at 212-215. The 2003 Pest Risk Assessment followed this same flawed approach. See Administrative Record, at 1070, 1074-1082.

In response to these flawed Risk Analyses, Dr. Hara's Report explained that several of the identified quarantine pests of *Phalaenopsis* spp. orchids from Taiwan "are not host-specific to orchids" and will feed on many host plants. Administrative Record, at 222. Dr. Hara pointed out that "[i]n addition to *T. palmi*, five other thrips species are listed as quarantine pest[s] of *Phalaenopsis* orchids from Taiwan. . . ." Administrative Record, at 224. Dr. Hara further discussed the prospect of potted orchids providing an avenue for the movement of thrips to importing coun-

---

[7] See Administrative Record, at 90 (Hawai`i Department of Agriculture Comment letter), Administrative Record, at 164 (Hawai`i Growers Association Comment letter).

- 14 -

tries—as did orchid flowers from Thailand. Administrative Record, at 224. With this, Dr. Hara

provided the following "example of the worldwide crisis of a pest species causing extensive global

economic damage:"

> The quarantine pest of orchids from Taiwan and Thailand, *Thrips palmi*, was first described as a new species from Sumatra by Karny in 1952 on tobacco and considered an insect without economic importance for more than 50 years (Castineira et al. 1997). The emergence of *T. palmi* as a destructive pest was first observed in 1977 in the Philippines destroying watermelon and cotton, and in 1978 in Thailand destroying cotton (Hirose 1991). Simultaneously, *T. palmi* invaded Japan in 1978 and New Caledonia in 1979. In Hawaii, *T. palmi* was first observed in 1982 and devastated numerous vegetable crops. Nakahara et al. (1984) reported that *T. palmi* was commonly intercepted on cut orchid flowers from the Orient (Thailand). Subsequently, *T. palmi* spread to several other Indian and Pacific Ocean islands, the Caribbean (1985), into India, Northern Africa and more recently to Australia (1991) and the mainland USA (Florida, 1991) (Layland et al. 1994).

Dr. Hara also noted that, more recently, numerous European Union members, including Italy,

France, Germany, and Spain banned the import of Thailand orchids after it was discovered they

were infested with *Thrips palmi*. Dr. Hara stated that large numbers of *Thrips palmi* have been

imported regularly into Europe for several years on cut *Dendrobium* orchid flowers, particularly

the white varieties. Administrative Record, at 174. Dr. Hara relied on published literature regarding the presence of *Thrips palmi* in Japan at latitudes of less than 34 degrees north, which suggests that *Thrips palmi* has the potential to colonize not only tropical but also temperate regions.

*Id.* Dr. Hara's Report provided numerous cited "references" to support his findings regarding

*Thrips palmi*. Administrative Record, at 225-227. Neither the Comment letters, Dr. Hara's Report, nor any of his cited references regarding thrips were provided during the Endangered Spe-

- 15 -

cies Act Section 7 Consultation process by Defendant Animal and Plant Health Inspection Service to Defendant Fish and Wildlife Service.

In 1998 Defendant Fish and Wildlife Service provided its own Comment, this that importing *Phalaenopsis* spp. orchids from Taiwan in growing media "may affect seven species of native orchids listed as endangered or threatened . . ., as well as numerous other federally listed plant species . . . [that] occur in 26 States plus Washington, D.C. and Puerto Rico." Administrative Record, at 267. Specific to the native Hawai`ian orchids, Defendant Fish and Wildlife Service noted that importation of *Phalaenopsis* spp. orchids from Taiwan may affect one Hawai`ian orchid listed as an Endangered species and two other native Hawai`ian orchids that are considered species of concern. Administrative Record, at 40-41, 269. Defendant Fish and Wildlife Service recommended that Defendant Animal and Plant Health Inspection Service enter into Section 7 Consultations, as required by the Endangered Species Act. Administrative Record, at 267. Approximately four years later, in October 2002, Defendant Animal and Plant Health Inspection Service provided Defendant Fish and Wildlife Service with the 1997 and 2003 Pest Risk Assessments and the required Biological Evaluation. Administrative Record, at 307.

Thereafter, during the Endangered Species Act Section 7 Consultation process on March 21st, 2003 Defendant Fish and Wildlife Service identified "two areas of residual concern" regarding the proposed importation from Taiwan of *Phalaenopsis* spp. orchids in growing media. One such

- 16 -

concern related directly to "several species of quarantine pest thrips."[8] Administrative Record, at

308. In its letter to Defendant Animal and Plant Health Inspection Service, Defendant Fish and

Wildlife Service said:

> It is not clear why the several species of quarantine pest thrips were eliminated from consideration as pests that are likely to follow the importation pathway. The phytosanitary measures do not appear to adequately address the potential for infestation of thrips, resulting in a substantial risk of the organisms entering greenhouse units, openings, and vent coverings. Specifically, the prescribed screening mesh size does not appear fine enough to exclude thrips from growing areas. Please provide an explanation why these species of thrips were dropped from the list of quarantine pests, and the rationale for the prescribed screening mesh size.

Administrative Record, at 307-308.

At a meeting held between the two Agencies on April 2nd-3rd, 2003, Defendant Animal and

Plant Health Inspection Service responded to this "residual concern" as follows:

> Thrips is a pest of Orchidaceae in Taiwan; however, there is no evidence in either the scientific literature or from the interceptions at APHIS plant inspection stations that thrips is a pest on *Phalaenopsis*. PPQ ran a search on their database for thrips interceptions on *Phalaenopsis* from Taiwan. No interceptions turned up. . . . *Phalaenopsis* has been imported bare root into the United States for at least 20 years. During that time no problems with pests on *Phalaenopsis* have arisen. The importation has amounted to a long-term uncontrolled experiment.

Administrative Record, at 305.

---

[8] By then, Defendant Animal and Plant Health Inspection Service had narrowed application of

the proposed Rule to "tissue culture and greenhouse-grown *Phalaenopsis* orchids in approved

growing media" from Taiwan only. Administrative Record, at 350, 412.

On April 3rd, 2003 Defendant Animal and Plant Health Inspection Service also responded to this "residual concern" in a letter to Defendant Fish and Wildlife Service as follows:

> The thrips identified in the pest risk assessment (PRA) were not considered for several reasons. The extensive literature searches APHIS conducted revealed that none of the thrips identified in the PRA have ever been reported on Phalaenopsis. Furthermore, a review of pest interceptions made over the past eight years on bare-rooted Phalaenopsis plants from Taiwan show that thrips have not been intercepted. . . .

Administrative Record, at 301.

Defendant Animal and Plant Health Inspection Service took too narrow a view in responding to Defendant Fish and Wildlife Service's concerns regarding thrips. As discussed below, Defendant Animal and Plant Health Inspection Service provided circular responses to Defendant Fish and Wildlife Service's concerns about eliminating several species of quarantine pest thrips from further consideration in the Pest Risk Assessments. Defendant Animal and Plant Health Inspection Service also never adequately provided the "rationale" requested by Defendant Fish and Wildlife Service concerning the prescribed screen mesh size for orchid greenhouses in Taiwan. Absent adequate responses to Defendant Fish and Wildlife Service's concerns, Defendant Animal and Plant Health Inspection Service failed to provide Defendant Fish and Wildlife Service with all the best available scientific and commercial data. As a result, the risk of invasion by *Thripidae* pests of *Phalaenopsis* spp. orchids remains alarmingly high.

**The Issue of Thrips Infestation Was Not Adequately Addressed by Defendant Animal and Plant Health Inspection Service Or by Defendant Fish and Wildlife Service.**

In response to Defendant Fish and Wildlife Service's plainly-stated request to explain *why* several species of quarantine pest thrips were eliminated from consideration in both the 1997 and 2003 Pest Risk Assessments, Defendant Animal and Plant Health Inspection Service provided circular responses that ducked altogether the thrips infestation issue. Doing so, Defendant Animal and Plant Health Inspection Service also misdirected Defendant Fish and Wildlife Service about the threat of thrips infestation resulting from importing from Taiwan potted *Phalaenopsis spp.* orchids by not providing *all* available and relevant scientific and commercial data. Without such data, Defendant Fish and Wildlife Service could not, and did not, adequately fulfill its mandatory duty to use "the best scientific and commercial data available" in assessing whether this proposed Federal action would adversely affect listed species or their critical habitat. 16 U.S.C. § 1536(a)(2); *Natural Resources Defense Council*, *supra*, 364 F. Supp. 2d at 1131-32.

At the outset, Defendant Animal and Plant Health Inspection Service *conceded* that the thrips identified in the Pest Risk Assessments were *not* considered.[9] The initial justification offered by Defendant Animal and Plant Health Inspection Service was that the literature searches it conducted did not show that the thrips identified in the Pest Risk Assessments were ever reported on *Phalaenopsis* spp. orchids. This defies logic.

----

[9] See Administrative Record, at 301 ("The thrips identified in the pest risk assessment . . . were not considered. . . .").

- 19 -

Both the 1997 and 2003 Pest Risk Assessments identified numerous thrips species as quarantine pests associated with *Phalaenopsis* spp. orchids from Taiwan. Administrative Record, at 205, 207, 210, 1077-1078, 1080-1081. All orchids, including *Phalaenopsis* spp. orchids from Taiwan, belong to the *Orchidaceae* family, and this is one of the largest, and the most diverse, family of flowering plants. Administrative Record, at 90, 164. "A conservative estimate would be [that] more than 15,000 species and nearly 1,000 genera" belong to the *Orchidaceae* family. Administrative Record, at 90. The *Phalaenopsis* spp. orchid is a genus belonging to the *Orchidaceae* family.[10] Administrative Record, at 90. Neither the records provided by Taiwan, nor Defendant Animal and Plant Health Inspection Service's interception records, would necessarily call out the specific genus, *Phalaenopsis* spp. orchids, as opposed to the broader *Orchidaceae* family of orchid plants. The 1997 Pest Risk Assessment supports this. This Pest Risk Assessment identifies several quarantine pest thrips on *Orchidaceae*. Administrative Record, at 205, 207. According to this Pest Risk Assessment, "[t]he host, '*Orchidaceae*' is used for orchids which are not identified to genus at time of pest interception." Administrative Record, at 210. This, of course, is understandable. It is not documented in the Administrative Record that enforcement officials conducting inspec-

---

[10] The term "genus" means the usual major subdivision of a biological family or subfamily in the classification of organisms, usually consisting of more than one species. Random House WEBSTER'S COLLEGE DICTIONARY, 2d Ed. 1997, at 542.

tions at ports of entry and making interception records are trained biologists that could necessarily classify a particular orchid plant as to its genus.

Second, as pointed out by Dr. Hara, several quarantine pests of *Phalaenopsis* spp. orchids from Taiwan are not host-specific to orchids. Administrative Record, at 222. Such pests will feed on many different host plants, including the broader *Orchidaceae* family of flowering orchid plants. Administrative Record, at 205, 207, 210, 1077-1078.

Third, Defendant Animal and Plant Health Inspection Service asserts that *Phalaenopsis* spp. orchids have been imported bare-root from Taiwan for at least twenty years, and, during this time, "no problems with pests on *Phalaenopsis* have arisen." Administrative Record, at 305. But the interception records likely would not have keyed thrips-infested *Orchidaceae* in such records to the genus *Phalaenopsis*. And the 1997 Pest Risk Assessment makes it clear that several thrips species have infested *Orchidaceae*, and that the term "*Orchidaceae*" is used for orchids that are not identified to genus at the time of pest interceptions at ports of entry. Administrative Record, at 399. As such, there is a reasonable link between thrips-infested *Orchidaceae* and the genus *Phalaenopsis* that has been ignored.

Finally, the Hawai`i Department of Agriculture's Comment letter explained to Defendant Animal and Plant Health Inspection Service that the plant family *Orchidaceae* is considered a high pest-risk, requiring State-mandated sixty-day quarantine. Administrative Record, at 117-118. The Comment letter further explained that since 1953 the Hawai`i Department of Agriculture has routinely intercepted pests in shipments of high-risk bare-rooted orchid seedlings, Ad-

- 21 -

ministrative Record, at 36-37, pests that were detected while the bare-rooted orchid seedlings were held in State-mandated sixty-day quarantine. Administrative Record, at 86-87. These same shipments had been examined and passed by inspectors of the exporting country, as well as by Defendant Animal and Plant Health Inspection Service, before moving into State-mandated quarantine. Administrative Record, at 87. Hawai`i's pest interceptions on these orchid plants showed that while they were held under Hawai`i's mandatory sixty-day quarantine, they developed larger, observable pest populations not detected, or detectable, in previous inspections. Administrative Record, at 87-88.

In addition, in 1993 Hawai`i's pest interceptions on 50,000 bare-rooted *Phalaenopsis* spp. orchids imported from Taiwan into Hawai`i illustrated obvious flaws in Defendant Animal and Plant Inspection Service's port-of-entry inspections. See Administrative Record, at 89. Here, even after Defendant Animal and Plant Inspection Service's port-of-entry inspections, Hawai`i Department of Agriculture's inspectors intercepted additional pests on *Phalaenopsis* spp. orchids from imported from Taiwan while these plants were held in State-mandated sixty-day quarantine. *Id.* Now, however, under the Final Rule, no State-mandated quarantine procedures are permitted, because Defendant Animal and Plant Inspection Service has announced that the Final Rule *preempts* State regulations. Administrative Record, at 1539.

In short, in logical terms, when records show that several species of thrips have been documented on the larger *Orchidaceae* plant family, then the *Phalaenopsis* orchid genus, or subfamily, is necessarily a part of the same orchid family that is at high risk of thrips infestation, especially

since thrips are not host-specific. Defendant Animal and Plant Inspection Service cannot get around Defendant Fish and Wildlife Service's concerns by proclaiming that it need not conduct a risk analysis where such pests have not been "specifically linked" only to the genus *Phalaenopsis*. The "link" has been made to the larger *Orchidaceae* family—where numerous records exist of thrips infestation. Administrative Record, at 205, 207, 210.

**The Issue of Appropriate Screen Mesh Size For the Program Greenhouses Was Swept Under the Rug.**

In its Section 7 Consultation correspondence, Defendant Fish and Wildlife Service pointed out that the "phytosanitary measures do not appear to adequately address the potential for infestation of thrips resulting in a substantial risk of the organisms entering greenhouse units, openings and vent coverings." Administrative Record, at 308. Defendant Fish and Wildlife Service opined that "the prescribed screening mesh size does not appear fine enough to exclude thrips from growing areas." *Id*. Defendant Fish and Wildlife Service's request was simple enough. It only asked that Defendant Animal and Plant Health Inspection Service "provide . . . the rationale for the prescribed screening mesh size," as it relates to thrips. Administrative Record, at 308. But as explained below, Defendant Animal and Plant Health Inspection Service, again, misdirected Defendant Fish and Wildlife Service on the issue of the appropriate screen mesh size for the program greenhouses adequate to preclude thrips infestation. In doing so, Defendant Animal and Plant Health Inspection Service failed to provide all available scientific and commercial data, likely because there was no adequate response to Defendant Fish and Wildlife Service's concerns

- 23 -

other than a reduction in screen mesh size. Instead, Defendant Animal and Plant Health Inspection Service simply swept the issue under the rug.

First, in April 2003, in response to Defendant Fish and Wildlife Service's inquiry regarding the appropriate screen mesh size to preclude thrips from infesting greenhouses in Taiwan where *Phalaenopsis* spp. orchids were to be grown over a period of some twelve months, Defendant Animal and Plant Health Inspection Service said that proposed greenhouse exclusionary measures, including screening, *is* sufficient to prevent thrips and other pests from entering the program greenhouses:

> In addition, required greenhouse pest exclusionary measures such as the use of air-curtains, double doors and *screening prevent the introduction of various pests, including thrips*, from entering the greenhouse.

Administrative Record, at 301 (Emphasis added).

Despite such representations, Defendant Animal and Plant Health Inspection Service had said in earlier Consultation meetings with Defendant Fish and Wildlife Service that "0.6 mm mesh size is *not* sufficient to exclude thrips." Administrative Record, at 305 (Emphasis added). Again, Defendant Fish and Wildlife Service was not provided with the Hawai`i Orchid Growers Association and Hawai`i Department of Agriculture Comment letters. As a result, Defendant Fish and Wildlife Service could not answer its own inquiry about a screen mesh size that would be sufficient to preclude thrips from infesting greenhouses in Taiwan where *Phalaenopsis* spp. orchids are grown-out as finished, flowering plants.

- 24 -

The conditions required by 7 C.F.R. § 319.37-8(e) for program greenhouses in which plants are cultivated in an approved growing medium include requirements that the greenhouse "must have screening with openings of not more than 0.6 mm on all vents and openings. . . ." 7 C.F.R. § 319.37-8(e)(2)(ii). However, the Hawai`i Orchid Growers Association Comment letter and Dr. Hara's Report *confirm* that this required 0.6 mm opening will not exclude quarantine pests of *Phalaenopsis* spp. orchids, including, among others, *Thrips palmi*. Administrative Record, at 166, 223. Dr. Hara's opinions are based on published scientific research referenced in his Report.[11] The Hawai`i Department of Agriculture Comments also noted that greenhouses with screens and automatic doors are not impermeable to all insects, and a screen of 0.6 mm mesh is "certainly insufficient" to exclude several pests that can easily penetrate this screen mesh. Administrative Record, at 83. The Hawai`i Department of Agriculture pointed out that thrips and other pests are of "minute size" and they can hide in the potted plant material and in unopened buds. Administrative Record, at 81-82. Nonetheless, without support, Defendant Animal and Plant Health Inspection Service asserted repeatedly that "the risk" of *Phalaenopsis* spp. orchids grown in pots of sphagnum moss "under modern conditions in [an] approved media is no greater than that posed by . . . orchid material currently allowed entry as bare-root plants or in other approved . . . growing media. . . ." Administrative Record, at 215. There can be no support for this statement—after

---

[11] See Administrative Record, at 223, 225 (specifically, Bethke, *et al.* 1994).

having conceded that this mesh size is insufficient to preclude thrips and other pests from these program greenhouses.

The Final Rule itself is perhaps the best evidence showing how Defendant Animal and Plant Health Inspection Service avoided altogether Comments confirming that screens of 0.6 mm mesh are inadequate to keep out *Thrips palmi* and other pests. Administrative Record, at 1535-1536. After summarizing Comments that *Thrips palmi* and other pests will not be excluded using 0.6 mm screens, Defendant Animal and Plant Health Inspection Service took the position that the screen size required under the regulations in 7 C.F.R. § 319.37-8(e) "is sufficient to exclude all life stages of all quarantine pests of *Phalaenopsis* . . . orchids identified in our risk analysis. . . ." Administrative Record, at 1536. The problem, of course, with this statement is that Defendant Animal and Plant Health Inspection Service *excluded* several species of thrips from further consideration in these Risk Analyses. See Administrative Record, at 210-212, 1070, 1074-1082. The Risk Analyses, in fact, were limited to only a handful of quarantine pests. Administrative Record, at 210 (Table 2); Administrative Record, at 1082 (Table 3). By necessarily limiting its discussion in the Final Rule only to those quarantine pests identified in these Risk Analyses, Defendant Animal and Plant Health Inspection Service avoided completely the issue of the adequacy of the screen mesh to preclude thrips and other pests from invading the program greenhouses in Taiwan where *Phalaenopsis* spp. orchids are grown-out as finished, flowering, orchid plants.

- 26 -

**The Re-Initiation of Endangered Species Act Consultations Again Raised Questions About the Adequacy of the Screen Mesh Size For the Program Greenhouses, And, Again, Defendant Animal and Plant Health Inspection Service Obfuscated the Issue.**

In October 2003 Defendant Animal and Plant Health Inspection Service re-initiated Endangered Species Act Consultations with Defendant Fish and Wildlife Service. Administrative Record, at 2733-35. As part of this re-opening of Consultations, Defendant Fish and Wildlife Service again raised questions about the adequacy of the screening for the program greenhouses in Taiwan. Specifically, Defendant Fish and Wildlife Service stated:

> We had understood during the interagency discussions and subsequent agreement that *0.6 mm mesh size for greenhouse, opening, and vent screening was inadequate to prevent the introductions of thrips infestations into APHIS-approved greenhouses*, and that 0.4 mm mesh size or less would be used. Using the smaller mesh size would provide an additional degree of insurance against an infestation of thrips and reduce the potential for importing thrips into the United States. Please explain *how* requiring use of 0.6 mm mesh will prevent thrips introductions.

Administrative Record, at 2738 (Emphasis added).

On June 2nd, 2004 Defendant Animal and Plant Health Inspection Service responded to Defendant Fish and Wildlife Service's inquiry regarding screening by claiming there was a "misunderstanding" between the Agencies, and conceding, again, that thrips could get through the required 0.6 mm screen mesh for the program greenhouses. Administrative Record, at 2743-2744. Nonetheless, Defendant Animal and Plant Health Inspection Service maintained its position that a 0.6 mm mesh size "is the most practical," and promised to incorporate mitigation measures, "including routine and repeated pesticide sprays, when warranted, to reduce the risk of infesta-

- 27 -

tion and possible introduction of thrips into the United States." *Id*. Specifically, Defendant Animal and Plant Health Inspection Service responded as follows:

> Regarding the comment that FWS understood from our discussions that [Defendant Animal and Plant Health Inspection Service] would require a mesh size smaller than 0.6 mm for the greenhouse, opening, and vent screenings to prevent the introductions of thrips infestations into APHIS-approved greenhouses, [Defendant Animal and Plant Health Inspection Service] assumes that this was a *misunderstanding*. [Defendant Animal and Plant Health Inspection Service] recognizes that thrips are very small insects, approximately 0.2 mm, and could get in through even the 0.4 mm mesh size suggested by FWS. Mesh size of 0.6 mm *is the most practical* for many situations; smaller mesh sizes would require adapting greenhouse construction to accommodate the need for air circulation and cooling fans, especially in more humid climates. However, [Defendant Animal and Plant Health Inspection Service] incorporates specific *equivalent mitigation measures, including* routine or repeated *pesticide sprays*, when warranted, to reduce the risk of infestation and possible introduction of *thrips* into the United States.

*Id*. (Emphasis added).

In other words, as stated above, requiring greenhouse screens smaller than 0.6 mm would require changes in greenhouse construction, and, therefore, Defendant Animal and Plant Health Inspection Service decided to maintain a mesh size of 0.6 mm, but to require specific mitigation, including "routine or repeated pesticide sprays." The problem with this response is two-fold.

First, Defendant Animal and Plant Health Inspection Service in essence admits that its selection of mesh size for the screening in the program greenhouses is based on economic concerns, not on any concern for the prevention of pest-infestation in such greenhouses. Second, Defendant Animal and Plant Health Inspection Service's promise of mitigation—pesticide sprays—to reduce the risk of infestation, including thrips, is a promise that was not kept, and cannot be kept.

- 28 -

Given that the Final Rule was published in the FEDERAL REGISTER on May 5th, 2004, Administrative Record, at 1524, and given that Defendant Animal and Plant Health Inspection Service's promise of mitigation was made about a month later, on June 2nd, 2004, it is no surprise that the Final Rule contains *no* mitigation requirement for "pesticide sprays." In fact, in the Final Rule, Defendant Animal and Plant Health Inspection Service *admits* that its regulations "do not require any specific pest-control measures, such as pesticide applications to be applied in the greenhouse." Administrative Record, at 1538. This is clearly arbitrary and capricious: Defendant Animal and Plant Health Inspection Service made no effort to ensure that adequate mitigation actions would indeed be taken. *American Rivers*, *supra*, 271 F. Supp. 2d at 253 ("A no jeopardy finding under the ESA must have a reasonable *certainty* of occurring, not just a reasonable chance").

In spite of Defendant Animal and Plant Health Inspection Service's inherent inconsistencies and unenforceable promises, Defendant Fish and Wildlife Service concurred, again, with Defendant Animal and Plant Health Inspection Service's determination that the Final Rule allowing the importation from Taiwan of finished, flowering *Phalaenopsis* spp. orchid plants in pots is "not likely to affect" Federally-listed species or designated critical habitat. Administrative Record, at 2852. Defendant Fish and Wildlife Service provided this concurrence despite Defendant Animal and Plant Health Inspection Service never having adequately explained to Defendant Fish and Wildlife Service "*how* requiring use of 0.6 mm mesh will prevent thrips introductions." Administrative Record, at 2738 (Emphasis added). As shown above, in fact, the best available scien-

tific and commercial data confirms that the required mesh size is insufficient to preclude entry of thrips and other pests into the program greenhouses. Ignoring such data plainly violates the substantive provisions of the Endangered Species Act. 16 U.S.C. § 1536(a)(2).

**Defendant Animal and Plant Inspection Service Never Evaluated the Action's Effect on Critical Habitat of Federally-Listed Species.**

Defendant Animal and Plant Health Inspection Service wholly disregarded its mandatory duty to "insure" that its proposed Final Rule would not "result in the destruction or adverse modification of habitat" of any Endangered or Threatened species. 16 U.S.C. § 1536(a)(2). Section 7 of the Endangered Species Act requires that an action Agency consider *not only* potential risks to listed species, *but also* potential risks to the critical habitat of such species. *Greenpeace v. National Marine Fisheries Service*, 80 F. Supp. 2d 1137, 1149 (D. Wash. 2000) ("The requirement that an agency evaluate the effects of its actions on critical habitat is mandatory under the ESA."); *see also Tennessee Valley Authority v. Hill*, 437 U.S. 153, 173 (1978) ("One would be hard-pressed to find a statutory provision whose terms were any plainer than those in § 7 of the Endangered Species Act," quoting 16 U.S.C. § 1536(a)(2)).

Defendant Animal and Plant Health Inspection Service's Biological Evaluation provided to Defendant Fish and Wildlife Service was required to consider potential risks to the designated critical habitat of Federally-listed species posed by the importation from Taiwan of *Phalaenopsis* spp. orchids in approved growing media. 50 C.F.R. § 402.12(a). Such a Biological Assessment "*shall* evaluate the potential effects of the action on listed and proposed species *and designated*

*and proposed critical habitat* and determine whether any such species *or habitat* are likely to be adversely affected . . ." *Id.* (Emphasis added). Consequently, this action by Defendant Animal and Plant Health Inspection Service was arbitrary and capricious, and contrary to procedures required by law. 5 U.S.C. § 706. In addition, this action did not consider the relevant factors in its analysis and "entirely failed to consider an important aspect of the problem." *Motor Vehicle Manufacturers Association*, *supra*, 463 U.S. at 43; *Marsh*, *supra*, 490 U.S. at 378.

The Biological Evaluation confirms that Defendant Animal and Plant Inspection Service failed to conduct the required analysis. See Administrative Record, at 348, 364-366.[12] The Biological Evaluation focused on Federal species of concern (1,259 Threatened, Endangered or proposed species). Administrative Record, at 350, 364-367. It considered all such species "potentially at-risk" as a result of the proposed importation of *Phalaenopsis* orchids from Taiwan. *Id.* It assumed that *Phalaenopsis* spp. orchid importation from Taiwan would occur in "the States, District of Columbia, Guam, Northern Mariana Islands, Puerto Rico and the Virgin Islands of the United States." *Id.* at 366. However, it simply failed to evaluate and determine whether the proposed importation of *Phalaenopsis* spp. orchids from Taiwan would result in destruction or adverse modi-

---

[12] Also *compare* the Table of Contents of the Biological Evaluation, indicating an evaluation of "associated critical habitats," Administrative Record, at 349, with the actual text in Section IV, which deletes any reference to the evaluation of "associated critical habitats." Administrative Record, at 364.

fication of the designated critical habitat of Federally-listed species. Administrative Record, at 367.

Hawai`i Department of Agriculture told Defendant Animal and Plant Health Inspection Service about its concerns whether the proposed Rule would result in the destruction or adverse modification of a designated critical habitat of several Federally-listed species in Hawai`i:

> As a result of a federal court ruling, USFWS was ordered to propose critical habitat designations throughout Hawaii for 245 endangered plant species. . . . Once areas are designated as critical habitats, USFWS has federal regulatory oversight in order to ensure that actions will not likely result in the destruction and [adverse] modification of the critical habitat. . . . If USDA fails to identify pests in their pest risk assessments that would be detrimental to listed plants and animals as is the case in this risk assessment, and in doing so, allow importations that would increase the likelihood that invasive species will be introduced, establish, and harm listed species or cause more endemic species to be listed, or prevent listed plants to recover, Hawaii, as a state, will systematically lose more rights over its lands under this broad federal authority.

Administrative Record, at 1049-1050.

But the Administrative Record is devoid of any evaluation of the potential risks of destroying or adversely modifying critical habitat of numerous Federally-listed species. That there was no such evaluation is perhaps explained by Defendant Animal and Plant Health Inspection Service's failure to submit any Comments received during the Section 7 Consultation process. The lack of *any such* analysis on this critical issue in and of itself is a substantive violation. *Greenpeace*, *supra*, 80 F. Supp. 2d at 1149; 16 U.S.C. § 1536(a)(2).

- 32 -

With aloha,

/s/ Cyrus E. Phillips, IV

_____
Cyrus E. Phillips, IV
D.C. Bar Number 456500
May 3rd, 2006

1828 L Street, N.W., Suite 660
Washington, D.C. 20036-5112
Telephone:     (202) 466-7008
Facsimile:     (202) 466-7009

Electronic Mail:     *lawyer@procurement-lawyer.com*

Attorney of record for Plaintiffs,
Hawai`i Orchid Growers Association.

- 33 -

CERTIFICATE OF SERVICE

I hereby certify that on Wednesday, May 3rd, 2006 a true and complete copy of this Opposition to Defendants' Motion to Dismiss and Reply Memorandum of Points and Authorities was filed electronically via the Court's Electronic Case Filing System, through which notice of the filing will be sent to:

Donna S. Fitzgerald, Esq.

Electronic Mail:    donna.fitzgerald@usdoj.gov

Attorney of record for Defendants,
United States Department of Agriculture, *et al.*,
and United States Department of the Interior, *et al.*

/s/ Cyrus E. Phillips, IV

_____
Cyrus E. Phillips, IV