UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HAWAI'I ORCHID GROWERS ASSOCIATION,            )<br>                                                                          )<br>       Plaintiff,                                              )<br>                                                                          )<br>       v.                                                         )<br>                                                                          )<br>UNITED STATES DEPARTMENT OF        )<br>AGRICULTURE; <u>et. al.</u>,                              )<br>                                                                          )<br>       Defendants.                                       )<br>_____)  | Civil Action No. 05-1182 (RCL) |

## **MEMORANDUM OPINION**

This matter comes before the Court on the plaintiff's motion [33] for summary judgment and defendants' motion [39] to dismiss, or in the alternative, for summary judgment. Upon consideration of these motions, the oppositions thereto, the reply briefs, the applicable law, and the entire record herein, the Court concludes that plaintiff's motion will be denied and defendants' motion for summary judgment will be granted.

## **BACKGROUND**

This lawsuit challenges the actions of defendant United States Department of Agriculture ("USDA") Animal and Plant Health Inspection Service ("APHIS") during Endangered Species Act ("ESA") consultations, 16 U.S.C. § 1536, with the United States Department of the Interior's Fish and Wildlife Service ("FWS").

Plaintiff Hawaii Orchid Growers Association[1] disputes the 2004 Final Rule promulgated

---

[1] Hawaii Orchid Growers Association is an unincorporated non-profit service organization for professional orchid growers. It was formed in 1995 in Hawaii to coordinate efforts among breeders, propagators, and growers of orchids in Hawaii. The members generate more than $23,000,000 in annual sales. (Pl.'s Mot. 2-3.)

by the APHIS. Acting pursuant to the Plant Protection Act ("PPA") of 2000, APHIS promulgates the "Quarantine 37" regulations, 7 C.F.R. § 319.37, to protect the nation's plant resources from foreign pests. On May 5, 2004, APHIS amended Quarantine 37 to add orchids of the genus *Phalaenopsis* from Taiwan to the list of plants that may be imported in an approved growing medium, subject to specified growing, inspection, and certification requirements. Final Rule, 69 Fed. Reg. 24,916 (May 5, 2004). The new rule added Taiwanese *Phaleonopsis* orchids to the list of plants covered by the plants-in-growing-media rule, 7 C.F.R. § 319.37-8(e), which allows imports with a number of restrictions.

The Taiwanese government requested a rule change in 1994 and 1995. AR 25. In response to this request, APHIS performed a risk assessment pursuant to the risk evaluation standards set forth by the plants-in-growing-media rule in effect at the time. See 7 C.F.R. § 319.37-8(g) (1998). APHIS prepared the Pest Risk Assessment ("PRA") to "examine plant pest risks associated with the importation of live *Phalaenopsis* plants in sphagnum growing medium from Taiwan into the United States." 1997 PRA at 1. In order to consider that request and determine whether to propose a rule change, the Quarantine 37 regulations required APHIS to, among other things:

> collect information about the plant and growing medium and about the method of preparing the plant for importation; evaluate the history of past plant pest interceptions or introductions into the United States associated with the plant; catalogue the potential plant pests associated with the type of plant in the country of origin and determine if any of the pests is a quarantine pest; conduct an individual pest risk assessment by estimating the probability that the pest (1) will be on or with the plant at the time of importation, (2) will survive in transit and enter the United States undetected, and (3) will colonize once entering the United States, and by estimating the actual and perceived economic, environmental, and social damage that

>would occur if the pest is introduced, colonizes, and spreads; and determine whether the overall compilation of risk is greater than the risk of importing the plant with bare roots.

7 C.F.R. § 319.37-8(g) (1998).

Pursuant to Section 7 of the ESA, APHIS initiated consultation to assess the potential effects of the proposed action on endangered or threatened species. AR 330. In September 2002, APHIS sent FWS a Biological Evaluation ("BE"). AR 347; AR 387. The FWS identified two areas of concern that remained after the review of the BE by the other FWS regions, but resolved them in April of 2003. AR 304-06. Ultimately, FWS concurred with APHIS's determination that the importation of *Phalaenopsis* species orchids from Taiwan in approved growing media will not adversely affect federally listed or proposed endangered or threatened species or their habitats. See Final Rule, 69 Fed. Reg. 24, 916 (May 5, 2004).

On March 31, 2005, plaintiff sent a letter to the Secretaries of Interior and Agriculture, and to FWS Acting Director Matt Hogan and APHIS Administrator W. Ron DeHaven, informing them of plaintiff's intent to file suit under the ESA. (Def.'s Mot. 22.) Plaintiff filed its complaint on June 13, 2005, and an amended complaint on June 24, 2005. (Dkt. 1, 3.) Defendants filed their answer on September 2, 2005, and filed the administrative record on December 21, 2005. (Dkt. 14, 24.) While plaintiff's amended complaint filed in this action raised four counts, only two counts (Counts I and III) remain before this Court, as the parties stipulated to dismissal of Counts II and IV soon after defendants moved to dismiss those counts. (Dkt. 19, 20) On February 10, 2006, plaintiff filed its motion for summary judgment. In response, defendants filed their opposition and motion to dismiss, or in the alternative, for summary judgment.

3

**LEGAL STANDARD**

As defendants note, judicial review is governed by Section 706 of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 706. Cabinet Mountains Wilderness v. Peterson, 685 F.2d 678, 685 (D.C. Cir. 1982); accord, Newton County Wildlife Ass'n v. Rogers, 141 F.3d 803, 808 (8th Cir. 1998) (confining judicial review to the administrative record in an ESA citizen suit case). Under the APA, a court may overturn agency action only if the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or in excess of its statutory jurisdiction or authority. 5 U.S.C. §§ 706(2)(A), (C). The court must consider whether the agency acted within the scope of its legal authority, whether the agency has explained its decision, whether the facts on which the agency purports to have relied have some basis in the record, and whether the agency considered the relevant factors. Fund for Animals v. Babbitt, 903 F.Supp. 96, 105 (D.D.C. 1995). The Court must review the agency's action based on the administrative record before the court. See Camp v. Pitts, 411 U.S. 138, 142 (1973).

Under the arbitrary and capricious standard, the burden of proof is on the party challenging the decision. See Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health & Human Servs., 844 F. Supp. 770, 783 (D.D.C. 1993) (citing Schweiker v. McClure, 456 U.S. 188 (1982)). A particularly deferential standard of review is especially appropriate where, as here, an agency is "making predictions, within its area of special expertise, at the frontiers of science." Baltimore Gas & Electric v. NRDC, 462 U.S. 87, 103 (1983). Accordingly, absent a showing of arbitrary action, a court must assume an agency has exercised its discretion appropriately. Kleppe v. Sierra Club, 427 U.S. 390, 412 (1976).

**DISCUSSION**

Plaintiff contends that the promulgation of the rule violated the ESA in three respects. First, plaintiff contends that during the ESA consultation process with the FWS, APHIS failed to inform FWS that thrips are pests associated with *Phalaenopsis* plants from Taiwan, and that APHIS had purportedly incorrectly told FWS that past interceptions had not detected thrips on *Phalaenopsis* plants from Taiwan. (Pl.'s Mot. 28-30.) Second, plaintiff contends that APHIS violated the ESA's requirement to use the "best scientific and commercial data available" when it failed to "recognize[]" Hawaii's "unique ecology" in the consultation process with FWS. (Id. at 30.) Finally, plaintiff contends that FWS violated the ESA by concurring with APHIS's Biological Assessment and failing to consider another Biological Opinion. (Id. at 31.) In defendants' response and motion for summary judgment, they raise the jurisdictional defense of lack of standing. The defendants also argue that the final rule was not arbitrary or capricious, and that APHIS had complied with the ESA in its promulgation of the rule. While this Court finds that plaintiff has standing, it agrees with defendants that the agency action was lawful.

**I.      Standing**

Defendants argue that plaintiff lacks standing because it cannot demonstrate the requisite injury in fact. The Court is not persuaded by defendants' argument.

First, plaintiff satisfies the requirements for an association to have standing. An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. Friends of the Earth v. Laidlaw Envtl Servs,

5

528 U.S. 167, 181 (2000). The Hawaii Orchid Growers Association falls into this category. Comprised of "breeders, propagators, and growers of orchids in Hawaii," its goals are to "promote the development of [the orchid] industry by supporting marketing, research and education projects." AR 159, 1598. Also, one or more of its members grow *Phalaenopsis* orchids (AR 1601, 1603), and one or more such members specialize in potted *Phalaenopsis* orchids. AR 1606, 1608.

Second, to establish the requisite Article III standing, plaintiff bears the burden of demonstrating, at an "irreducible minimum," that: (1) it has suffered a "concrete and particularized" injury which is "actual and imminent"; (2) that the injury is "fairly traceable to" the action of the defendants; and (3) that the injury is likely redressable by a favorable decision from the court. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). Under the ESA, plaintiff must demonstrate that listed species are in fact threatened, that the threat is "fairly traceable" to the challenged federal action, and that plaintiff will be directly affected aside from any general interest in the subject matter. Id., 504 U.S. at 562-63. Furthermore, "[a]t the summary judgment stage, plaintiff may not merely allege its standing to sue, but must support its claims with affidavits or other evidence of specific facts." Id., 504 U.S. at 561. This Court shall consider each element in turn.

    A.    *Injury*

Plaintiff alleges it will be injured both because of increased competition and because of possible alien insect infestation resulting from the imports of these orchids. In this case, plaintiff alleges that the blood-sucking midge *Forcipoymia taiwana*, will invade Hawaii through eggs laid in the sphagnum moss in which maturing *Phalaenopsis* spp. orchids that will be introduced into

6

Hawaii. (Compl. 38.) Plaintiff further maintains that they will be injured economically by the Final Rule as well. Plaintiff will no longer enjoy an advantage from domestic sales of mature potted *Phalaenopsis* orchid plants and will not be able to produce nursery products in a domestic environment free from invasive alien plant pests. (Id. at 39.) Defendants argue that plaintiff's claims are conclusory and that plaintiff has failed to produce any evidence to support their assertions. (Defs.' Mot. 24.) The Court concludes, contrary to defendants' argument, that plaintiff has adequately demonstrated for purposes of establishing standing that alien pests may invade Hawaii and its native orchids through eggs laid in the sphagnum moss, in which maturing *Phalaenopsis* orchids are cultivated in Taiwan (sphagnum moss that will be allowed entry into Hawaii with mature potted *Phalaenopsis* spp. orchid plants). AR 786-87, 1041-45, 1057-59. Plaintiff also establishes that plaintiff's native Hawaiian orchids[2] may be injured in a concrete and particular way by pests that may be introduced into the environment as a result of the alleged violations of the ESA. The Court concludes that the plaintiff has alleged a sufficient injury in fact to satisfy Article III's case or controversy requirement.

B.     *Causation and Redressability*

Next, defendants argue that the injury threatened by the Final Rule is merely speculative. (Defs.' Mot. 25-26.) The Court does not agree. Defendants are "confusing the merits of a case with the threshold requirement of standing to present a challenge." Public Citizen v. FTC, 869 F.2d 1541, 1549 (D.C. Cir. 1989). The record shows that FWS had stated that the Final Rule is an area of "residual concern." AR 267-68. Moreover, APHIS in its Final Regulatory Flexibility

---

[2] There are three species of native Hawaiian orchids of concern (all of these species of are found only in Hawaii): (1) *Platanthera holochila* is listed as an Endangered Species; (2) *Anoectochilus sandvicensis* and (3) *Liparis hawaiiensis*. (Pl.'s Mot. 2.)

Analysis concluded that the Final Rule "will likely have a significant adverse economic impact on many U.S. growers of potted *Phalaenopsis* plants, many of whom are probably small entities," 69 Fed. Reg. 24932 (2004); and that this Final Rule "may have adverse economic impacts on producers of other plants besides *Phalaenopsis* spp. orchids." 69 Fed. Reg. 24934 (2004).[3]  Therefore, the harm to the native orchids is "fairly . . . traceable to the challenged action of the defendants, and not . . . [t]he result of the independent action of some third party not before the court." Lujan, 504 U.S. at 560 (citing Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 41-42 (1976)).

Finally, plaintiff's challenges to the Final Rule will indeed be redressed by a favorable decision in this case.  Accordingly, the Court finds that plaintiff has met the requirements for standing in this case.[4]

## II.    ESA Consultation Process

### A.    *Thrips on Phalaenopsis plants*

Plaintiff's first argument is that APHIS failed to provide FWS with information regarding thrips infestations during the consultation process.  (Pl.'s Mot. 28-30.)  Specifically, plaintiff contends that the failure of APHIS to provide the comments to the FWS resulted in APHIS "arbitrarily limit[ing]" the list of quarantine pests likely to be included in orchids imported from Taiwan when APHIS prepared and issued both its 1997 PRA and its 2003 Risk Analysis.  (Pl.'s Opp'n 11.)  The Court is not persuaded by plaintiff's argument.  The administrative record

---

[3] Ultimately, APHIS found that "we do not believe continuing to prohibit the importation of *Phalaenopsis* from Taiwan is justified, since we have determined that *Phalaenopsis* from Taiwan can be imported in growing media without introducing plant pests or noxious weeds into the United States." 69 Fed. Reg. 24933 (2004).

[4] In a similar case, plaintiff was held to have standing to challenge the Final Rule as well.  Hawai`i Orchid Growers Assoc. v. USDA, 2005 U.S. Dist. LEXIS 4548. (D.D.C. 2005).

demonstrates that APHIS and FWS discussed the issue of thrip infestations, including the issue of the appropriate screen mesh size for excluding thrips. (See Defs.' Mot. 28-34.)

  APHIS provided FWS the 1997 PRA that identified pests that are known to be associated with *Phalaenopsis* plants in Taiwan and assessed the risk posed by those pests. AR 387; 1524. While the 1997 PRA identified thrips as a "quarantine" pest associated with *Phalaenopsis* plants, APHIS determined thrips were not reasonably likely to follow the pathway and be included in commercial shipments of *Phalaenopsis* plants. 1997 PRA at B-15, AR 401. In 2003, APHIS updated the risk document and also shared that 2003 document with FWS. AR 2238. The change APHIS made in the 2003 Risk Analysis was to add a substantial discussion of how the risk mitigation measures contained in the plants-in-growing-media rule mitigate the risks posed by the six quarantine pests that were identified as likely to follow *Phalaenopsis* from Taiwan, which do not include thrips. AR 1119, 1127-1136 (Part III of the 2003 Risk Analysis).

  In addition, the Washington Office of FWS sent a letter to Regions 1-6, asking them to review and comment on the BE. After reviewing the BE and meeting with APHIS, the FWS concurred in APHIS' BE. On March 21, 2003, FWS provided the comments of all of the Regions to APHIS. AR 307-09. FWS identified two areas of concern that remained after the review of the BE by the Regions, and correspondence between APHIS and the Regions. Those two concerns were: (1) why several species of quarantine pest thrips were purportedly eliminated from consideration, and (2) why the BE referred to aqueous zone solution in relation to the sphagnum moss. AR 308. The concerns were resolved at a meeting held between APHIS and FWS on April 2-3, 2003. AR 304-06. APHIS also sent FWS a letter on April 3, 2003 to address these two remaining issues. AR 301-02. On April 7, 2003, FWS advised that after reviewing the

9

BE, additional supporting documentation, and the April 3, 2003 letter from APHIS, it concurred with APHIS' determination that the importation of *Phalaenopsis* from Taiwan in approved growing media would not adversely affect federally listed or proposed endangered or threatened species or their habitat. AR 299.

Finally, the issue of thrips was again raised during the programmatic consultation in 2004. In a March 18, 2004 letter, FWS recommended that APHIS require a 0.4 mm screen mesh in APHIS approved greenhouses, in order to prevent thrips infestations, as prior inter-agency discussions led FWS to believe that the 0.6 mm screen mesh size would be inadequate. AR 2239. APHIS responded with a June 2, 2004 letter, which advised that FWS was incorrect in assuming that greenhouses would have a screen mesh size of smaller than 0.6 mm. AR 2235. This second round of consultation concluded in September 2004, when FWS sent APHIS a letter stating that the agency's June 2, 2004 correspondence addressed the FWS recommendations, and that it was concluding the Section 7 consultation on the proposed program. AR 2125. The letter also noted that FWS' initial determination and the determination after re-initiation were the same. AR 2125.

As described above, the administrative record demonstrates that APHIS and FWS discussed the issue of thrips at several points during the Section 7 consultation. Therefore, the decision of APHIS was a considered one and not arbitrary, capricious, or unlawful.

    B.    *Hawaii's "Unique Ecology"*

Plaintiff also contends that APHIS failed to consider the "best scientific and commercial evidence." Specifically, plaintiff alleges that APHIS recognized Hawaii's "unique ecology" in adopting a policy change with respect to ants, but does not give the same consideration in the

case at hand. (Pl.'s Mot. 30.)

"[T]he Court's review of the scientific data included in the administrative record is limited to an inquiry as to whether the record supports the agency's findings and whether the agency's actions were based on the best scientific data available." Am. Wildlands v. Norton, 193 F. Supp. 2d 244, 252 (D.D.C. 2002) (internal quotes omitted). The court must only determine whether the agency has met certain minimal standards of rationality. Id. The standard "merely prohibits [APHIS] from disregarding available scientific evidence that is in some way better than the evidence [it] relies on." Southwest Center for Biological Diversity v. Babbitt, 215 F.3d 58, 60 (D.C. Cir. 2000) (citation omitted)(emphasis added). Furthermore, neither the Act nor the regulation specifies what qualifies as the best scientific and commercial data, or how relevant information is to be shared between the agencies. See 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.14(d)

According to the record, APHIS decided to exclude "exotic ant species not present or widely distributed on the Hawaiian Islands" because ants did not co-evolve with native flora and fauna, and therefore, plants and animals on the island are "particularly susceptible to herbivory predation and competition from ants." (Pl.'s Mot. 19.) The record also establishes that APHIS's BE explained that the proposed import of *Phalaenopsis* species from Taiwan may effect, but is not likely to adversely effect federally proposed or listed species or "designated critical habitat." AR 348. This was due to the fact that the proposed action included many mitigation measures and safeguarding opportunities that are "highly effective in preventing the entry of pests into the United States." AR 372. What is not in the record is support for the notion that a failure to address Hawaii's "unique ecology" during Section 7 consultation meant that the agency has

failed to rely on the "best scientific or commercial evidence available." Plaintiff's conclusory assertion fails to explain how APHIS's decision to exclude ants from Hawaii has any bearing on the Section 7 consultation process in this case.

Accordingly, plaintiff has failed to establish that APHIS did not use the "best scientific and commercial evidence available."

      C.    *APHIS' Biological Assessment and Biological Opinion*

Plaintiff's last argument is that FWS' determination in concurring with APHIS' BE was arbitrary and capricious because they failed to consider whether alien species could enter the United States through entry of "suitable breeding habitats." (Pl.'s Mot. 31-32.) Once again, plaintiff's argument fails.

Plaintiff provides nothing in the record for its assertion that FWS failed to consider the risks associated with the growing medium. In fact, the record demonstrates that FWS and APHIS considered those risks during initial and programmatic consultations. (See Defs.' Mot 37-40.) In addition, the record is replete with discussion demonstrating that the Section 7 consultation considered the risks posed by import of *Phalaenopsis* plants in growing media, such as sphagnum moss. See AR 390-391, 404.

Likewise, the BE that APHIS provided FWS contained a section identifying "Specific Mitigation Measures for Propagative Materials," AR at 355, and the 2003 Risk Analysis explains that it is examining the "phytosanitary risks associated with the potential importation, from Taiwan into the United States, of moth orchid plants rooted in APHIS-approved growing media." AR 2295. The 2003 Risk Analysis also noted that use of approved growing media is one mitigation measure required by APHIS regulations to "effectively remove . . . pests from the

pathway, thus precluding them from establishment in the United States." AR 2313.

The record also contains documents reflecting FWS's identification and consideration of the risk from the growing media. In a November 30, 1998 comment letter on the proposed rule, FWS noted and discussed the possible risk of introduction of alien species or diseases through the importation of the growing medium, and the possible resulting harm to Hawaii's native orchids and other native flora. AR 267-68. Similarly, in a memo to the FWS Director, the Regional Director of FWS' Southeast Region commented that "[p]hytosanitary or protective measures might be effective, but nonnative pests could still gain access to the U.S. during importation if approved growing media were infested or contaminated." AR 345. Finally, during an April 2003 meeting, APHIS and FWS discussed the use of ozonated water in Taiwanese greenhouses, and APHIS noted that utilizing unused sphagnum moss as an approved growing medium does not require disinfection treatment. AR 305.

The record in this case undermines plaintiff's argument that FWS ignored the issue of whether pests could be imported in the approved growing medium. A review of the record shows that APHIS and FWS considered the risks posed by the importation of plants in approved growing media, and discussed those risks during the Section 7 consultation. Therefore, plaintiff has failed to demonstrate that APHIS or FWS acted in an arbitrary or capricious manner in considering the risks posed by the approved growing media.

## CONCLUSION

For the reasons stated herein, plaintiff has failed to demonstrate that either APHIS or FWS violated the ESA. The Court will deny plaintiff's motion for summary judgment and grant defendants' motion for summary judgment.

A separate Order will issue this date.

Signed by Royce C. Lamberth, United States District Judge, June 29, 2006.